543 So.2d 1020 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Cornelius MARTIN, Defendant-Appellant.
No. CR 88-767.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*1022 George Higgins and Higgins & Starling, Pineville, for defendant-appellant.
Clifford Strider, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Defendant, Cornelius Martin, appeals his conviction and sentence for possession of marijuana with the intent to distribute, a violation of LSA-R.S. 40:966(A)(1). Defendant waived his right to trial by jury, and after a bench trial was found guilty as charged. The sentencing court suspended the imposition of defendant's sentence for five years subject to the condition that defendant remain on five years active probation, that he serve two years in the parish jail, and pay a fine of $1500.
Defendant appeals alleging thirteen assignments of error, two of which have not been briefed. Assignments of error which have neither been briefed nor argued are considered abandoned. State v. Jimmerson, 432 So.2d 1093 (La.App. 3rd Cir.1983). Accordingly, defendant's assignments of error relative to the preliminary examination and "other crimes" evidence are considered abandoned. We affirm.

FACTS
Based on information provided by a confidential informant, Detective Faglie obtained a search warrant on December 15, 1987, to search defendant's house located on Ninth Street in Alexandria. In the late afternoon of that same date, Detective John Faglie of the Rapides Parish Sheriff's Office, assisted by two other detectives and a uniformed officer served a search warrant on defendant's residence in Alexandria. After the officers knocked on the door and received no answer, they entered and secured the house.
However, before beginning their search, the defendant's wife and children walked into the house. Defendant's wife was presented with the search warrant and advised of her constitutional rights. During the search, the officers found a quarter *1023 pound of marijuana contained in two ice chests and in two tin cans in the defendant's bedroom. The officers also seized three loaded handguns, a scale, a calculator, a cigarette rolling tray, two boxes of cigarette rolling papers and 5 additional loose packages, $19 found inside one of the tin cans, and a tape recorder and a tape found inside the recorder.
While the officers searched defendant's house, the uniformed officer, who was outside watching for defendant's return, saw defendant drive past his house. After the officer stopped the defendant, Detective Faglie arrested defendant and advised him of his Miranda rights. A search of defendant's car produced a roach clip. Defendant was also carrying $131.20. After defendant was returned to his house, he told Detective Faglie that the marijuana was for his personal use and that he did not sell it.

CONFIDENTIAL INFORMANT
Defendant contends that the trial court erred in denying his motion to disclose the identity of the confidential informant who gave the information which formed the basis for the search warrant. Defendant argues that the identity of the confidential informant was necessary because the informant had knowledge of an essential element of the crime charged, namely the intent to distribute, since he told Detective Faglie that defendant was selling marijuana from his Ninth Street residence.
The identity of a confidential informant who supplies information to law enforcement officers concerning criminal activity is privileged information. State v. Williams, 347 So.2d 184 (La.1977). The State may withhold the identity of the confidential informant, unless the defendant shows exceptional circumstances which warrant disclosure of the identity of the confidential informant. State v. Edwards, 351 So.2d 500 (La.1977). The general rule is that the burden is upon the defendant to demonstrate exceptional circumstances, and much discretion is vested in the trial court on the question of whether the circumstances warrant disclosure. State v. Babbitt, 363 So.2d 690 (La.1978).
We have carefully reviewed the transcript of the hearing on defendant's motion for a preliminary examination (the only evidence introduced in support of his motion to reveal the identity of the confidential informant) and find that the confidential informant merely gave the information which the police used to obtain the search warrant. We have also reviewed the affidavit in support of the search warrant. The only mention of the informant in the search warrant is that he was at the home of defendant and that he saw a quantity of marijuana present there. Unlike defendant's allegations in the motion to reveal the identity of the informant, there is no evidence in the record that the informant participated in the crime with the defendant. Moreover, defendant made no showing of any exceptional circumstances to justify that disclosure of the identity of the informant would be helpful to the defense of his case. Therefore, we find no error in the trial court's denial of defendant's motion to reveal the identity of the confidential informant.

CONTINUANCE
Defendant contends that the trial court erred when it denied his oral motion for continuance and/or recess based on the unavailability of a newly discovered material witness because of her hospitalization for ill health. Defendant's oral motion was made on the morning of trial.
The Louisiana Supreme Court said on numerous occasions that an oral motion for continuance is improper under LSA-C.Cr.P. Art. 707, and that the denial of an oral motion for continuance presents nothing for review. State v. Jones, 395 So.2d 751 (La.1981), and cases cited therein.
Defendant attempts to circumvent the writing requirements of LSA-C.Cr.P. Art. 707 by attempting to align himself with the exception recognized in State v. Parsley, 369 So.2d 1292 (La.1979), and its progeny, State v. Jones, supra, and State v. Simpson, 403 So.2d 1214 (La.1981). In *1024 State v. Parsley, supra, the Supreme Court held that an oral motion for continuance can be made if the facts necessitating the continuance arose unexpectedly. In Parsley the trial court refused to accept defendant's guilty plea and the trial on the charged offense was immediately called. Under this circumstance, the Supreme Court considered defendant's oral motion. Similar reasoning was applied in State v. Jones, supra, where on the day of trial defendant, who intended to plead guilty, changed his mind and insisted on a jury trial, and in State v. Simpson, supra, where defense counsel, the Indigent Defender Board, found out on the day of trial that it was supposed to represent defendant.
We are not ready to extend the exception to the writing requirement for motions for continuance recognized in Parsley to the facts of the present case. The case sub judice was continued twice before, and the absent material witness had never been subpoenaed. Accordingly, absent a written motion for continuance, we find that this issue is not properly before us. See State v. Wagster, 361 So.2d 849 (La.1978).
Nevertheless, assuming that the motion was properly before us for purposes of argument, we find no error in the trial court's denial of defendant's motion for continuance. The granting or refusal of a motion for continuance rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of abuse of discretion and a showing of specific prejudice caused by that denial. State v. Jordan, 420 So.2d 420 (La.1982). Whether a refusal to grant a continuance was justified depends primarily upon the circumstances of the particular case. State v. Gaskin, 412 So.2d 1007 (La.1982).
A motion for continuance on the ground of absence of a material witness will not be granted when the evidence sought to be obtained would be merely cumulative. State v. Hernandez, 513 So.2d 312 (La.App. 4th Cir.1987), writ denied, 516 So.2d 130 (La.1987). Denying a continuance because of an absent witness is not error where those facts to which he would testify could be proven by witnesses actually present. State v. Hernandez, supra at 318.
In the case sub judice, defendant proposed to present the absent witness to testify that the scales seized in this matter was used by defendant's wife for dieting. Defendant and his wife so testified. Nevertheless, the crucial testimony relative to the scales was that such a device could have been used for a variety of purposes, including the weighing of marijuana, and contrary to defendant's assertions, as well as those of his wife, the scales were found in the bedroom next to the marijuana, not in the kitchen as claimed.
Therefore, we find that the absence of this witness did not prejudice defendant's case, since we find that her testimony would have been cumulative.

RELEVANCE: PHYSICAL EVIDENCE
Defendant contends that the trial court's admission into evidence of three loaded handguns, a tape recorder and cassette tape, and a calculator were erroneous because these physical objects were neither relevant nor material to the crime with which defendant was charged. He also contends that the State's questioning of him about where he purchased the marijuana was likewise irrelevant.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor. LSA-C.Cr.P. Art. 841. We have reviewed the record and find no contemporaneous objection to the testimony of Detective Faglie when he explained that he found a tape recorder in defendant's bedroom, and again when later in the trial the State offered into evidence the cassette tape recorder and tape inside. See infra for a detailed discussion of this question. Accordingly, defendant's argument *1025 about the relevance of the tape recorder and cassette tape is not properly before us.
Unlike the tape recorder and cassette tape, we do find that defendant timely objected to the introduction into evidence of the three weapons and calculator on the grounds alleged herein.
Evidence which is admitted must be relevant to the material issue. LSA-R.S. 15:435. Relevant evidence in a criminal case is that which tends to show the commission of the offense and intent, or which tends to negate the commission of the offense and intent. LSA-R.S. 15:441.
Evidence will be admissible as relevant as long as it has some logical or rational connection with the fact to be proved. State v. Howard, 283 So.2d 199 (La.1973). In determining the relevancy of evidence, the trial court is vested with much discretion, and his ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. State v. King, 355 So.2d 1305 (La.1978).
Intent to distribute is an essential element of the crime of possessing marijuana with the intent to distribute, thus it was incumbent upon the State to produce evidence tending to show that defendant possessed marijuana with the intent to distribute. State v. Willis, 325 So.2d 227 (La. 1975). The intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to a reasonable inference of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1981). In State v. Feeback, 414 So.2d 1229 (La.1982), the Supreme Court found that the presence of drug paraphernalia, handguns, note pads, a radio scanner, and a telephone answering machine were either relevant to prove defendant's intent to distribute, or irrelevant, but not of such a prejudicial nature to constitute reversible error.
In the present case the three loaded handguns were clearly relevant and material to the issue of intent to distribute. Detective Faglie testified that drug dealers often possess guns to protect themselves against their customers, other dealers, and the police. As to the calculator there seems to be a logical connection to the element of intent to distribute, since like the guns it was found near the marijuana, however, if not, it is not of such a prejudicial nature to constitute reversible error. State v. Feeback, supra at 1236.
Defendant further objected to the State's questioning of defendant on cross-examination about his source for the marijuana. Defendant contends such questioning was irrelevant and prejudicial. We disagree. Testimony about the transactions in which the marijuana was purchased was relevant to the question of intent. The State could delve into the questions of where, when, in what quantity, and from whom the defendant purchased the marijuana to establish circumstantial evidence with which to show possession with intent to distribute. In permitting this testimony, the trial court did not abuse its discretion.

VIOLATION OF DISCOVERY
At trial, although only one inculpatory statement was introduced, Detective Faglie testified that defendant made several statements to him. Defendant contends that the trial court erred in allowing the introduction of an inculpatory statement defendant made because in the State's response to defendant's discovery motion, defendant was told of only one such statement in which he admitted to Detective Faglie that the drugs seized in his home were his, but that he did not sell marijuana. Since Detective Faglie's trial testimony indicated that several statements were made, defendant contends that he was denied a fair trial. We disagree.
The purpose of discovery rules in criminal trials is to eliminate unwarranted prejudice from surprise trial testimony. State v. Toomer, 395 So.2d 1320 (La.1981). Upon request by defendant, the State will be required to give written notice prior to trial of its intent to use confessions and/or inculpatory statements made by the defendant to prove guilt. LSA-C.Cr.P. Art. 716. The purpose of giving defendant sufficient notice of each inculpatory statement the *1026 State intends to use at trial is to permit defendant a fair opportunity to meet the issue. State v. Jackson, 450 So.2d 621 (La.1984).
An inculpatory statement admits a fact, circumstance or involvement which tends to establish guilt or from which guilt may be inferred. State v. Brumfield, 329 So.2d 181 (La.1976). Under Art. 716 the defendant is not entitled to the contents of the statement, but only to notice of its existence as well as when, where, and to whom it was made. State v. Quimby, 419 So.2d 951 (La.1982).
In response to discovery, the State responded as follows:
"Defendant made oral statement admitting that drugs were his, but he did not sell marijuana. Statement made to Det. John Faglie at R.P.S.O., narcotics officer."
We have carefully reviewed the record, and find that Detective Faglie testified only to one inculpatory statement made by defendant at his residence as follows:
"Q. What was that one statement [by the defendant]?
A. That he smoked marijuana and did not sell it.
Q. And did he tell you who the drugs in the house belonged to?
A. He stated it belonged to him."
This was the only inculpatory statement made by defendant to the arresting officers which was introduced at trial.
We find no error in the trial court's action permitting Detective Faglie to testify about this inculpatory statement. In this case the record clearly indicates that the State's response to discovery went beyond that required by giving the content of the inculpatory statement to defendant. Furthermore, upon direct examination defendant also admitted that he smoked marijuana, that he owned the marijuana seized at his home, but that he did not sell it. On this basis, we can not say that defendant has been surprised by Detective Faglie's testimony, or that he has been unduly prejudiced by its admission.
We now examine whether defendant was prejudiced because Detective Faglie, in contradiction to the State's discovery response, admitted at trial that defendant made several statements.
The prosecutor's failure to make full disclosure to defendant, of any confession or statement in the prosecutor's possession, does not automatically require a mistrial. State v. Clark, 446 So.2d 293 (La.1984). The sanctions for failure to comply with discovery motions are solely within the discretion of the trial judge, and reversal is warranted only where there is an abuse of discretion and prejudice is shown. State v. Knighton, 436 So.2d 1141 (La.1983), U.S. cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Even if the State's notice of intent to use certain inculpatory statements was unsatisfactory, the defendant will not be prejudiced where such statements were not used.
Although through the testimony of Detective Faglie, defendant may have made several statements, since none other than the one for which notice was given were introduced and defendant has shown no prejudice, we further find that the trial court did not abuse its discretion in allowing Detective Faglie to testify about the one statement made at defendant's house.
In connection with defendant's argument he alleges that contrary to the State's negative response to defendant's request for exculpatory statements, that perhaps some of the statements alluded to by Detective Faglie were favorable to him.
The State must produce evidence that is favorable to the accused where it is material to guilt or punishment. State v. Ates, 418 So.2d 1326 (La.1982). Where the State has no evidence tending to exculpate the defendant, there will be no error in not producing such evidence. State v. St. Amand, 274 So.2d 179 (La.1973).
In its response for such favorable material, the State answered defendant's discovery motion in the negative. We have carefully reviewed the record, finding no evidence of any exculpatory statements *1027 and defendant makes no showing of the existence of any. Therefore on this added ground we find that the trial court did not abuse its discretion in admitting the inculpatory statement made by defendant to Detective Faglie.

EXPERT TESTIMONY
Defendant contends that the trial court erred in allowing Detective Faglie to give expert testimony although he was not qualified or offered as an expert. Defendant argues that the introduction of Detective Faglie's expert testimony about the packaging and distribution was erroneous.
A witness must be qualified by the trial court before he can give testimony as an expert. State v. Clark, 340 So.2d 208 (La.1976), U.S. cert. denied, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977). The trial court is vested with broad discretion in the area of qualifying an expert and its ruling will not be disturbed on appeal absent an abuse of discretion. State v. Carter, 363 So.2d 893 (La.1978).
The record reflects that the State did not qualify Detective Faglie as an expert on direct examination. Likewise during cross-examination, defendant's attempts to ask opinions of this witness were rebuffed by the trial court because the witness had not been qualified and accepted as an expert.
Nonetheless, when the State had Detective Faglie on redirect examination and attempted to first ask expert testimony of the witness about the packaging and distribution of marijuana, the trial court allowed the testimony saying that the witness had been qualified and accepted as an expert.
We have carefully reviewed the record and find that the trial court did not formally accept the detective as an expert, even though it appears from its rulings that it considered him an expert.
In State v. Sherer, 411 So.2d 1050 (La. 1982), the Supreme Court was met with the exact issue before us. In Sherer a state trooper, who neither witnessed the accident nor was qualified as an expert witness, was questioned about how an accident occurred. In finding no error in the trial court's admission of this expert testimony, the reviewing court examined the record to see if the officer possessed sufficient education and practical experience to have testified as an expert. We shall do the same in the case sub judice.
Detective Faglie had been a narcotics investigator for the Rapides Parish Sheriff's Department for six years. In connection with his work he testified that he had actively been involved in several hundred arrests of persons who possessed drugs with the intent to distribute. From his experience as a narcotics officer he had seen the drug marijuana prepared for distribution and had seen persons use the drug. On this basis we find that the detective possessed sufficient practical experience as an expert in the packaging and distribution of marijuana, and the trial court did not abuse its discretion in so treating him.

DENIAL OF MOTION FOR ACQUITTAL
Defendant next contends that the trial court erred in denying his motion for acquittal at the conclusion of the State's case. He argues that the testimony of Detectives Faglie and Ronnie Sellers was insufficient to prove the essential element of intent to distribute marijuana.
A motion for acquittal is proper only when the case is tried before a judge. LSA-C.Cr.P. Art. 778. The denial of a motion for acquittal may be reversed on appeal only if there is no evidence of the crime or an essential element thereof, or where denial is a palpable abuse of discretion. State v. Mears, 445 So.2d 167 (La. App. 3rd Cir.1984), writ denied, 446 So.2d 1231 (La.1984).
In State v. House, 325 So.2d 222 (La. 1975), it was recognized that there are at least two elements in the crime of possession of marijuana with the intent to distribute; one being the possession and the other having the intent to distribute.
In the present case the first element is clearly met since on direct examination Detective *1028 Faglie testified that defendant admitted that the quarter pound of marijuana found in defendant's house was defendant's. Thus, we must only determine whether the State proved beyond a reasonable doubt that defendant had the requisite intent to distribute the marijuana.
The intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to reasonable inferences of intent to distribute. State v. Ramoin, supra. To determine whether the accused had the requisite intent to distribute, the trier of fact may consider how the prohibited substance was packed, the quantity of the substance seized, the presence of drug paraphernalia, and the presence of scales. State v. Trahan, 425 So.2d 1222 (La.1983).
After thoroughly reviewing the testimony of Detectives Faglie and Sellers, the only testimony presented in the State's case-in-chief, we find that the evidence clearly proves beyond a reasonable doubt the element of intent to distribute. Defendant was in possession of a quarter pound of marijuana stored in two ice chests, and in two tin cans in his bedroom. Detective Faglie testified that part of the marijuana was partially cleaned in preparation for selling, while some was still uncleaned. The detective's testimony was that when marijuana is bought in a large amount, it is generally unclean, and that a distributor will then clean the marijuana before selling it. The record shows that a scale, capable of weighing marijuana, was found in the bedroom located near the marijuana. In addition, defendant had over 1280 cigarette rolling papers in the bedroom, and $19 in one of the tin cans which had marijuana in it.
Taking into consideration the entirety of this evidence, we find no error in the trial court's denial of defendant's motion for acquittal.

TAPE RECORDING
Defendant contends that the trial court erred in allowing the State to cross-examine his wife and himself through the use of a tape recording seized at defendant's house at the time of defendant's arrest. Defendant argues that this tape recorded statement was not admissible because the State did not disclose its existence in the answer to discovery.
Before addressing defendant's assignment of error it is necessary that we develope the factual background to this issue.
The tape recorder with the cassette tape inside was found by the police officers in the defendant's bedroom where the marijuana was stored, and it was seized at the time of defendant's arrest. On January 13, 1988, defendant moved to have the tape recorder and other tangible property released because they were not relevant to the prosecution. On February 4, 1988, the State advised the court that it did not object to the release of the tape recorder, and the trial court so ordered. On February 8, 1988, defendant filed his motion for discovery and inspection under LSA-C.Cr.P. Art. 716. On February 29, 1988, the State responded to defendant's discovery motion, advising him of the oral statement defendant made to Detective Faglie, and on March 3, 1988, the State and defendant jointly stipulated, agreeing to informal discovery; at that time the trial court ordered defendant's discovery motions satisfied. Defendant's attempts to pick up the tape recorder on two occasions were not successful because of the unavailability of a key to the evidence room; as a result it was not picked up prior to trial.
Although the State introduced the tape recorder, and cassette tape inside, into evidence during its case-in-chief, without contemporaneous objection, except as noted by the defense, "pursuant to the Court's ruling on the value."[1] it did not utilize the *1029 statement recorded on the tape during its case-in-chief.
After the State rested, the defense called Detective Faglie, defendant's wife and then defendant to testify. During the State's cross-examination of defendant's wife, the following colloquy occurred regarding the tape recorder and the tape inside:
"Q. [By the State] I want you to listen to this and see if you can remembersee if you recognize anybody on this tape, okay?
A. Uh huh.
Q. Will you do that?
TAPE PLAYED FOR WITNESS
Q. Recognize what that is? Sound like a telephone?
TAPE AGAIN PLAYED FOR WITNESS. Voice on tape says `hello'.
Q. You know who that is?
A. No, I don't.
Q. Okay, you want to hear it again?
TAPE AGAIN PLAYED FOR WITNESS.
Q. Is that you?
[Objection by defense counsel on the basis that the State has not laid a proper foundation for the use of the tape recording, and that the State gave no notice that it was going to use this evidence at trial. Trial court overrules objection.]
COUNSEL [FOR STATE] PLAYS TAPE [AGAIN.] MALE VOICE HEARD.
Q. You recognize that voice? That was Mr. Martin [the defendant], wasn't it?
A. I guess, I don't know who it was.
Q. And he said, `yeah, I got a couple of pounds but in the dryer right notin the drawer right now'?
A. I don't know.
[Defense moves for a mistrial and is denied.]
Q. Do you remember that conversation, ma'am? You remember when you said, `Cornelius, phone' and he came up and said, `yeah, I have a couple of pounds but I gotta go out right now'?
A. I don't remember that conversation.
Q. You don't remember it?
A. No."
[Objection by defense that the tape had not been entered into evidence during the State's case-in-chief was overuled by the trial court.]
A similar colloquy occurred during the State's cross-examination of defendant, and *1030 ultimately defendant admitted that the voice on the recording may have been his.
Defendant argues that the tape recording was not admissible because its contents were not disclosed to the defense in response to a discovery request made in accordance with LSA-C.Cr.P. Art. 716, and that the trial court erred in not ordering a mistrial because of the State's use of the tape recording during cross-examination.
LSA-C.Cr.P. Art. 716(B) provides:
"Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made."
As stated before hereinabove, the Louisiana Supreme Court has long held that the purpose of discovery rules as set forth by the Code of Criminal Procedure is to "eliminate unwarranted prejudice which could arise from surprise testimony." State v. Toomer, supra. This is especially true where the defendant may be lulled into a misapprehension of the strength of the State's case. State v. Sweeney, 443 So.2d 522 (La.1983). However, failure by the State to disclose will not automatically require reversal of a conviction. The defendant must prove that he was prejudiced by the State's failure to disclose before a reversal is warranted. State v. Rault, 445 So.2d 1203 (La.1984), U.S. certs. denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984), 481 U.S. 1042, 107 S.Ct. 1987, 95 L.Ed.2d 826 (1987).
The record is devoid of any evidence of when the State became aware of the statement on the tape. However, the record bears out that although the State originally found the tape recorder irrelevant, as evidenced by its consent to release the recorder to the custody of the defendant, the State made it a point at trial to have the seizing officer identify the tape recorder and to have it, as well as the tape inside it, admitted into evidence at the close of its case-in-chief. Pursuant to LSA-C.Cr. P. Art. 729.3, the prosecutor was under a continuing duty to disclose the existence of the statement as soon as it was discovered. State v. Mitchell, 412 So.2d 1042 (La.1982).
Applying the above principles, we hold that it was error for the trial court to deny the defendant's objection to the introduction of this evidence, and to allow the case to immediately proceed with the State's cross-examination of the defendant and his wife using the questioned evidence.
Having concluded that the evidence contained in the tape recording was improperly admitted, we must next determine if its introduction into evidence was harmless error or, as requested by defendant, that it requires a reversal of his conviction.
In State v. Gibson, 391 So.2d 421 (La. 1080), the Louisiana Supreme Court adopted the standard of review of harmless error adopted by the United States Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In Gibson at page 428 the court stated:
"Our state constitution and statutory harmless error rule admonish a reviewing court generally to shun factual questions and to reverse only when substantial rights of the accused have been affected. In some of our recent decisions we may have come perilously close to violating both rules because of their lack of specific content. It appears that the Chapman test, i.e., `whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and that `the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt,' will assist this Court to fulfill both of the requirements of state law."
In the case sub judice, the State's case to prove the commission of the crime consisted of (1) the testimony of Detectives Faglie and Sellers, and (2) the introduction into evidence of defendant's oral admission to Detective Faglie (not the tape recorded statement) that the marijuana was his.
*1031 In the present case, the trial judge was the trier of fact since this was a bench trial. Accordingly, we are not faced with the impact that this tape recording may have had on a jury, especially since it was played more than once. Moreover, we are impressed that the trial judge had previously ruled at the close of the State's case that the State had sufficiently proved the elements of the offense and accordingly, denied defendant's motion for acquittal. As noted hereinabove we held that the trial court properly denied the motion for acquittal, finding proof of intent to distribute amply evidenced by the amount of marijuana seized, the presence of the loaded weapons, the use of scales in the bedroom, the large number of cigarette wrappers near the marijuana, and the location of the igloo ice chests used to store and dry the marijuana in the bedroom. Meanwhile, other than saying he misunderstood the strength of the State's case because of the lack of notice about the tape recording, defendant has not particularized how he has been prejudiced by the introduction of this evidence. Considering the strong direct and circumstantial evidence case made against defendant, even excising the tape recorded statement, we find that the State proved defendant's guilt beyond a reasonable doubt; thus, the trial court's sanctioning of the State's use of the tape recording constituted harmless error.

NEW TRIAL
Defendant contends that the trial court erred in denying his motion for new trial based on the assertion that the verdict was contrary to the law and evidence.
LSA-C.Cr.P. Art. 851 states:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence...."
In reviewing the denial of a motion for a new trial based on the insufficiency of the evidence, it must be determined whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Chapman, 438 So.2d 1319 (La.App. 3rd Cir. 1983).
Even after excising the tape recorded statement used in cross-examination of defendant and his wife, we find that there was sufficient evidence elicited during the State's case-in-chief from which a rational trier of fact could have found the defendant guilty as to each essential element of the crime charged beyond a reasonable doubt. Accordingly, we find no error in the trial court's denial of defendant's motion for new trial.

EXCESSIVENESS OF SENTENCE
Defendant argues that the trial court erred in suspending imposition of his sentence for five years, subject to the condition that he serve five years active probation, that he serve two years in the parish jail, and pay a $1500 fine. Defendant argues that this sentence is excessive under the particular circumstances of this case, and that it was improper for the sentencing court to partially base his sentencing choice on the fact that defendant had three guns in his home.
Article 1, Section 20 of the Louisiana Constitution prohibits the imposition by law of excessive punishment. For a sentence to be excessive, the penalty must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980). The sentencing court is given wide discretion in the imposition of sentences within statutory limits, and the sentence should not be set aside as excessive in the absence of a manifest abuse of the sentencing court's discretion. State v. Landry, 502 So.2d 281 (La. App. 3rd Cir.1987), writ denied, 508 So.2d 63 (La.1987).
*1032 The maximum sentence provided for possession of marijuana with intent to distribute is a term of imprisonment at hard labor for not less than five years nor more than thirty years and payment of a fine of not more than fifteen thousand dollars. LSA-R.S. 40:966(B)(2). Defendant's sentence falls within the statutory limits. However, a sentence imposed, although within the statutory limit, may still violate the defendant's constitutional right against excessive punishment under the particular circumstances of a case. State v. LeBlanc, 517 So.2d 951 (La.App. 3rd Cir.1987), modified in part, to delete the fine, 519 So.2d 123 (La.1988). The statutory guidelines of LSA-C.Cr.P. Art. 894.1 furnish the criteria by which an appellate court can review whether a sentence is excessive. State v. Cann, 471 So.2d 701 (La.1985). A sentence is deemed excessive if it: (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. State v. Landry, supra at page 290. In addition, the sentencing court must view the circumstances surrounding the offense committed and should impose a sentence particularized to defendant's conduct. State v. Lanclos, 419 So.2d 475 (La. 1982).
Defendant was 35 years of age at the time of this offense, was married, and the father of three minor children. Defendant served four years in the Marine Corp, and at the time of this offense earned approximately $317 per month by cutting hair from his residence. Defendant's wife held a job as a housekeeper at a community hospital. Defendant's home was inherited from his family, and was not encumbered by a monthly mortgage payment.
There was no pre-sentence report requested in this matter, however the facts enunciated were obtained from the testimony adduced at trial, and were familiar to the sentencing judge since he also presided over defendant's trial. The sentencing court stressed that the evidence proved that he was distributing marijuana from his home, and that three loaded weapons were seized from those premises in connection with defendant's arrest and the seizure of the marijuana. Based on these facts, the trial court felt that because defendant had numerous arrests, though no prior felony convictions, a lesser sentence would deprecate from the severity of the crime. Accordingly, the trial court concluded that a suspended sentence was appropriate conditioned on defendant's actual incarceration in the parish jail for two years.
After carefully reviewing the evidence adduced at trial, which clearly illumines the sentencing choice of the trial court, we find the sentence imposed herein not excessive.
For the foregoing reasons, the conviction and sentence of defendant are affirmed. Costs of this appeal are assessed to defendant.
AFFIRMED.
NOTES
[1] The following explains our interpretation of the record that defense counsel did not contemporaneously object to the tape recorder and cassette when it was offered into evidence by the State. We have combed the record in an attempt to discern what was meant by defense counsel when he stated that he did not object to the introduction into evidence of the Realistic cassette recorder and tape inside, "pursuant to the trial court's ruling on the value". The only other time that reference was made to the tape recorder was when Detective Faglie was questioned as follows: "Q. [By State] I believe you also found a recorder? A. Yes, sir. Q. And where was that found? A. That was found on top of this dresser." No objection was made to the relevance of this line of questioning. However, five lines later in the transcript, when the State questioned Detective Faglie about the weapons which were also found in the bedroom, the following colloquy took place:

"BY MR. HIGGINS [defense counsel]: Your Honor, I'm going to object to the recorder, weapons, stuff that are not probative as to this crime, Your Honor. I don't see the relevant value of all this.
BY MR. STRIDER [counsel for the State] Well, number 1, Your Honor, I have not attempted to introduce them yet.
BY MR. HIGGINS: Well, I'm going to object to any testimony concerning them, as to anything that is not material and of value to this trial, Your Honor.
BY MR. STRIDER: The State would submit that they are material, Your Honor. This man is charged with possession with intent to distribute drugs, controlled dangerous substance. I believe it's common knowledge and it's probative that drug dealers very commonly carry weapons to protect themselves because of the dangerous nature of their occupation. I believe to show that we seized three guns from one bedroom is really probative in this matter.
BY MR. HIGGINS: Your Honor, I don't see how it's probative. I've got two at my house in my bedroom. I mean, you know, I don't see how that's probative to this crime. He's charged with a drug offense.
BY MR. STRIDER: Mr. Higgins may have two guns in his bedroom at home, but I doubt that he has the drug paraphernalia and the drugs in his bedroom.
BY THE COURT: The objection will be overruled. I think it goes more to the weight than the admissibility of the evidence."
It is clear that defense counsel did not make a viable contemporaneous objection to the tape recorder found by Detective Faglie, and that the question had been asked and answered before the relevance of that evidence was questioned, and then only in connection with the weapons seized. Thus, 51 pages later in the transcript, when the tape recorder and tape inside were admitted into evidence, defense counsel mistakenly thought that the trial court had admitted the evidence subject to its determination of the proper weight to accord it.