819 So.2d 489 (2002)
Earl GAGNARD
v.
ZURICH AMERICAN INSURANCE CO./ASSURANCE COMPANY OF AMERICA and Betty Baudin.
No. 02-19.
Court of Appeal of Louisiana, Third Circuit.
June 12, 2002.
*490 Paul Boudreaux, Jr., Stacy C. Auzenne, Keiser, Auzenne & Boudreaux, L.L.C., Alexandria, LA, for Defendants/Appellants: Zurich American Insurance Co./Assurance Company of America and Betty Baudin.
John T. Bennett, Marksville, LA, for Plaintiff/Appellee: Earl Gagnard.
Court composed of NED E. DOUCET, JR., C.J., ULYSSES GENE THIBODEAUX and SYLVIA R. COOKS, Judges.
THIBODEAUX, Judge.
Plaintiff, Earl Gagnard, was involved in an automobile accident with defendant, Betty Baudin, the insured of co-defendant, Zurich American Insurance Company/Assurance Company of America. After Mr. Gagnard was discharged from treatment of accident injuries by Dr. Darron McCann, he slipped and fell at his home. Subsequent medical treatment was found to have stemmed from the original automobile accident and not from the fall. The trial judge found Ms. Baudin completely at fault, and defendants do not appeal such finding. Their appeal is grounded in Mr. Gagnard's receipt of general damages and medical expenses (both past and future), *491 and in the propriety of the testimony of plaintiff's treating physicians, Drs. Bryan and Darron McCann.
We affirm.

I.

ISSUES
We shall consider whether:
(1) the trial court committed manifest error in considering and relying upon the opinion testimony of Drs. McCann and McCann, who were not formally "tendered" as experts to the court, and one of whom testified from the medical reports of the other;
(2) the trial court committed manifest error in awarding sums for future medical expenses; and,
(3) plaintiff is entitled to damages for frivolous appeal.

II.

FACTS AND PROCEDURAL HISTORY
On August 18, 2000, Mr. Gagnard was northbound in his automobile on Washington Street in Marksville, Louisiana. A southbound vehicle, operated by Ms. Baudin, made a left turn from Washington Street onto Tunica Drive. In so doing, Ms. Baudin's vehicle entered the path of Mr. Gagnard's vehicle, causing an accident.
Mr. Gagnard filed suit against Ms. Baudin and her insurer, Zurich American Insurance Company/Assurance Company of America (hereinafter "Assurance") on November 15, 2000. Shortly after the accident, Mr. Gagnard began treatment with Dr. Darron McCann (hereinafter "McCann, Jr."). Mr. Gagnard was discharged from treatment on March 16, 2001. Later, sometime in July 2001, Mr. Gagnard slipped and fell at his home, striking his head and injuring his neck. Treatment with Dr. McCann, Jr. resumed on June 4, 2001, and continued until August 13, 2001. On August 16, 2001, Mr. Gagnard decided to visit Dr. Bryan McCann (hereinafter "McCann, Sr."), father of Dr. McCann, Jr. Dr. McCann Sr. was treating Mr. Gagnard at the time of trial. Both doctors' expert testimony was offered.
The final judgment assigned 100% of the fault to Ms. Baudin, and awarded Mr. Gagnard $49,890.32 ($30,000 in general damages, $7,890.32 for past medial expenses, and $12,000 for future medical expenses), together with legal interest thereon from the date of judicial demand until paid, and all costs, including the deposition fees of both doctors, Dr. McCann, Sr.'s trial appearance fee, and both doctors' deposition transcription fee. Ms. Baudin and Assurance appeal the award of damages as well as the propriety of the doctors' testimony, but do not challenge Ms. Baudin's liability. Plaintiff asks for frivolous appeal damages.

III.

LAW AND DISCUSSION

Testimony of Drs. McCann and McCann
Dr. McCann, Jr. began treating Mr. Gagnard shortly after the August 2000 accident, up until March 16, 2001. After the slip and fall, treatment with Dr. McCann, Jr. resumed on June 4, 2001, and continued until August 13, 2001. Three days later, Mr. Gagnard decided to visit Dr. McCann, Sr. Both doctors' expert testimony was offered at trial on behalf of the plaintiffboth of their depositions were offered, and Dr. McCann, Sr. testified in person.
Defense counsel argues first, that neither doctor was properly "tendered" for cross-examination as to their expert qualifications or to the trial court for acceptance *492 or rejection as expert witnesses. Assurance contends the alleged failure to "tender" had a bearing upon the nature of their testimony. Defense counsel also argues that because Dr. McCann, Sr. did not personally treat the plaintiff until August 16, 2001, he should not have been allowed to testify to Dr. McCann, Jr.'s treatment records prior to that date. Moreover, defense counsel asserts that it should have been allowed to probe his credentials and qualifications, which was allegedly prohibited, since neither doctor was "tendered" as an expert. The defense urges us, therefore, to reverse those portions of the trial court's decision based upon the "expert" testimony.
For its position, the defense cites State v. Martin, 543 So.2d 1020 (La.App. 3 Cir.), writ denied, 550 So.2d 625 (La.1989), where the defendant claimed trial court error for allowance of expert testimony from a witness who had not been qualified or offered as an expert. The court said that any witness must be qualified by the trial court before he may offer testimony as an expert, but ultimately determined that this particular witness in question possessed sufficient education and experience to have testified as such. Martin relied upon State v. Clark, 340 So.2d 208 (La.1976), cert. denied, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977), toward which the defense also directs our attention. In explaining that a witness must be qualified before giving an expert opinion, Clark cites the text of former La.R.S. 15:466, which read: "The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court." The statute was repealed effective January 1, 1989 by the enactment of the Louisiana Code of Evidence.
In our estimation, the nearest corollary of La.R.S. 15:466 in the present Code of Evidence is Article 702, which currently reads: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The defendants argue that for purposes of Article 702, Clark requires that a formal tender of the expert must be made, and a traverse of that expert must be permitted by opposing counsel. We disagree.
State v. Billiot, 942419 (La.App. 1 Cir. 4/4/96); 672 So.2d 361, writ denied, 96-1149 (La.10/11/96); 680 So.2d 655 stresses that former La.R.S. 15:466 entrusted to the discretion of the trial court the determination of whether to accept a witness as an expert. Absent an abuse of that discretion, the trial court's determination would maintain. Billiot explains that the adoption of the Code of Evidence has not changed this particular area of evidence law, and the trial court still retains its broad discretion. Comment (d) to La. Code Evid. art. 702 supports this interpretation. But even if the thrust of the law remains the same and, as per Martin and Clark, an expert must be qualified by the trial court, that does not mean that a formal tender must be made. In a recent case from this circuit, we were faced with an argument strikingly similar to that of defense counsel here. In Darbonne v. Wal-Mart Stores, Inc., 00-551 (La.App. 3 Cir. 11/14/00); 774 So.2d 1022, the defendant argued that prior to plaintiff's expert witness' testimony, the trial judge failed to conduct the necessary inquiry into his qualifications and expertise. The defendant also argued that the witness' qualifications *493 were not formally tendered to the court. We stated that
although the case law does call upon the trial court to exercise discretion in deciding whether or not to allow the expert witness to testify, the law does not specify the manner in which the trial judge is to do so. The defendant cites no law, either statutory or judicial, which would require a particular type of inquiry into the qualifications of an expert witness prior to his acceptance by the court. Instead it is only incumbent upon the trial judge to consider certain factors, either expressly or privately, before deciding whether to accept an individual as an expert. Therefore, there was no error in the court's inquiry into Mr. Nelson's qualifications.
The defendant further argues that because the court did not conduct a sufficient inquiry into Mr. Nelson's background and expertise, it wrongly qualified him. The law is well settled that trial courts have broad discretion in determining how much and what kind of education and/or training adequately qualify an individual as an expert. For example, formal education or training in a particular field is not always necessary to qualify as an expert in a particular field.
Id. at 1027(citations omitted) (emphasis added).
In the trial judge's oral reasons, he stated that he had "on numerous occasions, recognized Dr. McCann[, Sr.] as an expert in the field of Family Practice. And I place great weight and confidence in the testimony, that Dr. Bryan McCann has offered to this court in this case." In addressing defendants' objections to Dr. McCann, Sr.'s testimony from his son's treatment records, the trial judge said that "[i]t is very permissible in a court of law, for an expert to review another expert's records; and to give expert opinion concerning what one expert has placed of record, comment upon the conclusions, and records of another expert." This statement is important in that it proves that the trial judge considered both doctors to be experts, and such consideration was not an abuse of discretion.
It is of no moment that the trial judge did not engage in any particular type of inquiry into the doctors' qualifications. His words indicate his consideration of certain factors, like medical school attendance, before accepting the doctors as experts. Based upon the trial judge's statements, and considering the foregoing law, we find no merit to defense counsel's allegations that neither counsel nor the trial court was able to probe into the doctors' credentials or qualifications based on lack of a formal "tender" of the doctors as experts. The testimony of Drs. McCann and McCann will, therefore, not be ignored.
Having determined that both doctors were properly qualified, accepted, and permitted to testify as experts, we find no merit to the defendants' argument that Dr. McCann, Sr.'s testimony from Dr. McCann, Jr.'s treatment records was objectionable hearsay. The trial judge was correct in his statement, as excerpted above, that an expert is permitted to offer his own expert opinion of a second expert's records. Under La.Code Evid. art. 703, the facts or data upon which an expert bases his opinion may be those perceived by or made known to him at or before the trial. That is, the expert may base his testimony on matters not within his personal knowledge. Article 703, Comment (c). Not only is a medical expert permitted to testify to those conclusions that are based upon examinations performed by others, but "[m]edical experts are expected to rely in part on tests and examinations *494 performed by others in arriving at their opinions and this reliance does not render their opinions inadmissible hearsay." Parmelee v. Martin Marietta Michoud Aerospace, Inc., 566 So.2d 441, 445 (La.App. 4 Cir.1990) (quoting State v. Andrews, 369 So.2d 1049, 1051 (La.1979)) (emphasis added) (citations omitted). The expert testimony of Drs. McCann and McCann was permissibly relied upon for purposes of calculating all damage awards.

Future Medical Expenses
Defense counsel entreats us to reverse the entire $12,000 award of future medical expenses for what we see as two general reasons. First, counsel alleges that Mr. Gagnard's treatment for injuries sustained from the automobile accident ceased in March 2001, thereby foreclosing the defendants' responsibility for his medical care thereafter, up to the time of trial and beyond. Second, counsel alleges an absence of medical testimony regarding the necessity and cost of future medical treatment. We disagree.
To support its first argument, counsel underscores Mr. Gagnard's March 8, 2001 release from outpatient physical therapy and his March 16, 2001 release from treatment by Dr. McCann, Jr. Regarding Mr. Gagnard's March 16 visit, Dr. McCann, Jr. reported that his patient's "neck was completely asymptomatic since his previous visit. He said it had completely resolved. His physical examination was normal[,] he had full range-of-motion and was non tender."
Mr. Gagnard resumed treatment in June 2001, some time after sustaining a slip and fall injury at his home. Mr. Gagnard testified that the accident resulted in increased neck pain and a minor bump on his head. Dr. McCann, Sr. explained that it was not unusual for a 68 year-old person to experience mild arthritis in his neck, and that a slip and fall may not necessarily cause injury, though resultant injury was medically possible. Dr. McCann, Jr. testified that hitting one's head could aggravate preexisting cervical tenderness or arthritic condition. Even considering the lack of objective evidence of injury, Dr. McCann, Sr. testified that the post-slip and fall treatment was related to the automobile accident and not the in-home injury. His belief was grounded in his discussions with Dr. McCann, Jr., the patient's records, and his own August 16, 2001 examination of Mr. Gagnard. The defense offered no expert testimony to the contrary.
In his oral reasons, the trial judge described the June 2001 incident as one where "Mr. Gagnard, apparently, lost his balance, and struck his head, in what the court appreciates, as being a small bump on his head, and nothing of any consequence, in his life." Based upon the medical testimony, the finding of a causal link between Mr. Gagnard's automobile accident injuries and his treatment following the fall was not manifestly erroneous. Parenthetically, we observe that Mr. Gagnard testified that he fell after losing his balance on his way to the restroom to take medicine for his neck and shoulder. We now turn to defense counsel's second argument for reversal of future medical expenses.
To merit an award for future medical expenses, the plaintiff must show that it is more probable than not that such expenses will be incurred. Kerrigan v. Imperial Fire and Cas. Ins. Co., 99-603, 99-604 (La.App. 3 Cir. 11/3/99); 748 So.2d 67, writ denied, 99-3410 (La.2/4/00); 754 So.2d 236. Future medical expenses must be established with some degree of certainty, and will not be awarded in the absence of medical testimony indicating such and establishing their probable cost. Duncan v. Kansas City S. Ry. Co., 00-0066 *495 (La.10/30/00); 773 So.2d 670; Carrier v. Nobel Ins. Co., 01-0983 (La.App. 3 Cir. 2/6/02); 817 So.2d 126; Odom v. City of Lake Charles, 00-01050 (La.App. 3 Cir. 01/31/01); 790 So.2d 51, writ denied, 01-1198 (La.6/22/01); 794 So.2d 787. When the need for future medical care has been demonstrated but cost is not susceptible of determination, the court may make a reasonable award. Cole v. State ex rel. Dept. of Transp. & Dev., 99-912 (La.App. 3 Cir. 12/22/99); 755 So.2d 315, writ denied, 00-0199 (La.4/7/00); 759 So.2d 766. We disagree with defense counsel's allegation that plaintiff failed to carry these burdens.
Around the time of the trial's commencement, Mr. Gagnard continued to be treated for pain. Following his August 13, 2001 visit with Mr. Gagnard, Dr. McCann, Jr. reported that though his patient's back pain had been resolved, his neck injury was more chronic. The doctor noted that he "expect[ed] his [Mr. Gagnard's] neck to improve with further treatment. However, it has been about a year since his initial injury. It is very likely that Mr. Gagnard will continue to have periodic exacerbations of this neck pain." An August 16, 2001 report from Dr. McCann, Sr. noted that although no x-ray abnormalities were seen, there was tenderness in the right shoulder and posterior neck. The doctor also noted a lack of neck or shoulder injury history. On August 30, 2001, Mr. Gagnard reported ongoing neck pain, and on September 1, 2001, he reported neck and shoulder pain.
As the trial judge pointed out in his oral reasons, Dr. McCann, Sr. testified in deposition that Mr. Gagnard's injury was chronic, and that "there is at least a good possibility that in this case, because of his [Mr. Gagnard's] age and because of the arthritic degenerative changes, that he'll continue to have problems with it." He opined that "[i]t's more probable than not that he [Mr. Gagnard] will continue to need treatment for the rest of his life." The finding that Mr. Gagnard's injuries are permanent in nature was not manifestly erroneous.
Dr. McCann, Sr. stated that in addition to shots and medication, he recommended massage therapy or physical therapy. He testified that in the future, the cost of Mr. Gagnard's care as well as intervals between treatments would, more likely than not, be similar to what they had been, thereby rendering the cost of future care determinable, in our opinion, with some degree of certainty. This testimony was referenced in the trial judge's oral reasons.
We find that the whole of the medical testimony produced sufficient evidence of the requirement of future medical expenses, as well as the probable cost of such. Even in the event that the cost of such was insusceptible of determination, the trial court made a reasonable award. Damages for future medical expenses are special damages, which can be established to a reasonable mathematical certainty or with relative certainty. Wainwright v. Fontenot, 00-0492 (La.10/17/00); 774 So.2d 70; Whitehead v. Kansas City S. Ry. Co., 99-896 (La.App. 3 Cir. 12/22/99); 758 So.2d 211, writ denied, 00-0209 (La.4/7/00); 759 So.2d 767. "The discretion afforded the trier of fact to assess special damages is narrower or more limited than the discretion to assess general damages." Eddy v. Litton, 586 So.2d 670, 675 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1203 (La.1992). Such damages are, however, still subject to the abuse of discretion standard of review. Wainwright, 774 So.2d 70. Therefore, having determined that proof of the requirement of future medical care was sufficient, as was proof of their probable cost, we determine further that the trial judge did not abuse *496 his discretion in awarding $12,000 for future medical care. Also, since the post-slip and fall treatment was related to the automobile accident, past medical expenses were owed up through the time of trial. We do not find an abuse of discretion in awarding $7,890.32 for such expenses.

Frivolous Appeal
Counsel for Mr. Gagnard asserts his entitlement to damages for frivolous appeal. Such damages, as authorized by La.Code Civ.P. art. 2164, "are only allowed when `it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious.' Parker v. Interstate Life & Accident Ins. Co., 248 La. 449, 179 So.2d 634, 636-37 (1965)." Fowler v. Bossano, 01-0357 (La.App. 3 Cir. 10/3/01); 797 So.2d 160, 170 (quoting Hampton v. Greenfield, 618 So.2d 859, 862 (La.1993)). Plaintiff's counsel simply urges his blanket belief that this appeal lacks legitimate bases, without offering any evidence whatsoever that it was taken for delay or that counsel was insincere. Damages for frivolous appeal are hereby denied.

IV.

CONCLUSION
For the reasons set forth above, the judgment appealed from is affirmed. All costs are assessed to Zurich American Insurance Company/Assurance Company of America and Betty Baudin.
AFFIRMED.