Koplewitz v. Hamilton, No. 103-2-01 Wmcv  (Wesley, J., July 28, 2004)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**
**WINDHAM COUNTY, SS.**

| | |
|---|---|
| **LAURA KOPLEWITZ,** <br> **Plaintiff,** | |
| **v.** | **WINDHAM SUPERIOR COURT** <br> **DOCKET NO. 103-2-01 Wmcv** |
| **LISA HAMILTON and** <br> **A.R. SANDRI, INC.,** <br> **Defendants.** | |

## ORDERS ON MOTIONS IN LIMINE

Currently pending are Defendants' motions in limine to exclude the testimony of three of Plaintiff's expert witnesses: Dr. David G. Penney, Dr. Dennis A. Helffenstein, and Dr. Michael Kelly.  The Court concludes that all three are qualified to render expert opinions within the scope of Plaintiff's discovery disclosure as limited by this opinion. The limitations are relatively minor, and are subject to further refinement in the context of specific objections made at trial, and in consideration of the specific foundation laid at that time. In sum, the Court concludes that none of Defendants' criticisms of these experts' opinions – which essentially challenges as inherently unreliable the common analytic approach by many experts of assuming the validity of certain information which is provided to them - requires the wholesale rejection of those opinions as unfit to present to the jury.  Accordingly, Defendants' motions in limine will be **DENIED**.

**The Legal Standard Common to All Three Motions**

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." V.R.E. 702.

It is up to the trial court, as "gatekeeper," to decide if the witness is qualified as an expert, and if the evidence the expert plans to give is reliable and relevant enough to assist the trier of fact. See V.R.E. 104(a) & 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); State v. Streich, 163 Vt. 331 (1995).

In exercising its discretion as gatekeeper, the trial court's goal is to prevent the jurors from giving an expert's testimony greater credence than it deserves, without unnecessarily depriving them of information which may be helpful. See Cappiallo v. Northrup, 150 Vt. 317, 319 (1988). Thus, some limitations and weaknesses in the expert's qualifications or methodology need not render the expert's testimony inadmissible, as long as the opposing party has the opportunity to make those limitations and weaknesses clear to the jurors. Id. at 319-20. A witness should be qualified as an expert if the trial court determines the witness "has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001), citing Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 136, 156 (1999). Even if a witness is qualified as an expert, however, the expert witness should not be allowed to give testimony that goes beyond his or her area of expertise. Wheeling, 254 F.3d at 715-16.

For the reliability and relevance determinations, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. If the expert has used a "novel" methodology to arrive at his opinion (that is, a methodology that is not routinely used for purposes other than litigation and remains subject to reasonable dispute), the court will generally have to have a pre-trial hearing to determine the reliability and relevance of the evidence, considering the factors listed in Daubert or other similar authority. If the underlying reasoning or methodology is not novel, however, the court can take judicial notice of that fact, and dispense with a needlessly burdensome Daubert hearing for which no sufficient *prima facie* claim has been established. See State v. Kinney, 171 Vt. 239, 247-50 (2000).

**Motion to Exclude Expert Testimony of Dr. David Penney and Dr. Dennis Helffenstein**

Dr. Penney is a physiologist specializing in the effects of carbon monoxide poisoning, and Dr. Helffenstein is a clinical neuropsychologist and vocational expert also specializing in the effects of carbon monoxide poisoning. Defendants challenge their qualifications to offer opinions "on causation."

It is important to note that there are (at least) two separate and distinct causation issues in this case: (1) whether Defendants' negligence with respect to the allegedly faulty burner and chimney caused carbon monoxide poisoning in the farmhouse, and (2) whether carbon monoxide poisoning caused the harms Plaintiff has allegedly suffered. Dr. Penney and Dr. Helffenstein are both clearly qualified to speak to the latter causation question, since they have specialized in the effects of carbon monoxide for many years. Their qualification to speak to the former causation question within the scope of their expert opinion may require some limitation, depending on the foundation established at trial. Nonetheless, in the Court's view, the doctors' experience with and expertise in the effects of carbon monoxide poisoning necessarily involves experience with and expertise in the array of possible sources of carbon monoxide poisoning, including the ability to make conclusions about whether certain types of sources could have produced a level and duration of exposure which would be consistent with certain types of injuries. To clarify, it is beyond the scope of the expertise of Drs. Penney and Helffenstein to offer an opinion that the oil burner was faulty. However, based on other expert opinion in the case which has been established by the discovery, Penney and Helffenstein can respond to a hypothetical which assumes the oil burner was faulty, in the context of rendering an opinion as to whether a faulty oil burner in a residence could have produced a level of toxicity consistent with Plaintiff's symptoms.

Defendants also challenge the ability of Dr. Helffenstein to provide testimony relating the carbon monoxide poisoning suffered by Plaintiff to her termination from Goddard, characterizing his testimony as a "bare assertion." The Court cannot agree with this characterization. The ultimate issue of Plaintiff's motivation must be left to the jury. However, as an expert on the neurological and psychological effects of carbon monoxide poisoning, Dr. Helffenstein can respond to the reasons for the termination as stated by Plaintiff's supervisor, relate them to the pertinent symptoms Plaintiff has suffered (e.g., lessened ability to concentrate, lessened ability to communicate, shortness of temper, etc.), and state an opinion linking the character traits to the disease mechanism. Defendants further suggest this testimony is inconsistent with Dr. Helffenstein's prior testimony that Plaintiff was still smarter

3

than average and could still be an instructor. The Court is not convinced that Dr. Helffenstein's testimony about the termination from Goddard is inconsistent with this prior testimony. In any event, any arguable inconsistency would go to the weight of Dr. Helffenstein's testimony rather than its admissibility.

Defendants further argue that the opinions of Drs. Penney and Helfferstein are unreliable because they failed to independently verify the information given to them, failed to consult with Defendants' experts, and failed to eliminate all other possible causes. Perhaps these criticisms point out weaknesses that can be emphasized at trial. They do not undermine the basic reliability of the doctors' underlying reasoning or methodology, however.

Dr. Penney took as a given the information about Plaintiff's life and her symptoms as disclosed by the history he obtained from her; he applied the specialized knowledge he has gained through years of training, experience, and research; and he determined a probable diagnosis of the symptoms' cause as well as a prognosis for the future. There is nothing novel or unusual about this approach. Indeed, it is what medical professionals generally do. Moreover, it conforms to the classic pattern of expert opinion, building upon inference and analysis from a baseline of information. Such reliance upon facts "made known ...at or before the hearing" is specifically authorized by the rules of evidence. See V.R.E. 703. Such facts must be of a type reasonably relied upon by experts in the particular field, and they are subject to challenge on cross-examination or through the presentation of opposing evidence. But an expert is not required to personally verify every fact on which his opinion may rely in order to establish a foundation for his opinion. It is sufficient if such facts have other foundation and are typically considered in the particular kind of expert opinion under review.

Dr. Helffenstein also accepted the information given him, and then engaged in his own neuropsychological testing before reaching his conclusions about the cause and extent of the neuropsychological damage Plaintiff has suffered. Again, there is nothing novel about this methodology, and Defendant's challenge to its reliability is too insubstantial to warrant a preliminary evidentiary hearing.

**Motion to Exclude Expert Testimony of Dr. Kelly**

Dr. Kelly, an internist who specializes in occupational medicine, will testify that, as a result of exposure to

---

[1] The Court notes, however, that the lack of consultation between opposing experts in litigation of itself raises no inference of unreliability. Furthermore, there is evidence in the record indicating that

toxic levels of carbon monoxide, Plaintiff suffers from reactive airway disease and cognitive impairment.

Defendants challenge the qualifications of Dr. Kelly to testify regarding Plaintiff's cognitive impairment, arguing that only a neurologist or psychiatrist can make a diagnosis of cognitive impairment. Making diagnoses across a wide range of disease states is what internists do, however. Moreover, Dr. Kelly testified that as an internist whose practice focuses on occupational health, he regularly sees patients who suffer from toxic exposures from a variety of sources, and regularly diagnoses cognitive impairments as a result of those exposures. Based on this foundation, the Court finds no lack of foundation for Dr. Kelly's opinions as to Plaintiff's cognitive impairment based on toxic exposure.

Defendants also contend Dr. Kelly's diagnosis is unreliable because it was based on his subjective impressions of her rambling speech, without his taking any objective tests. This conveys an inaccurate picture of the diagnostic approach however. Although Dr. Kelly did not conduct the tests himself, his diagnosis was reached after he examined the results of neuropsychological tests conducted by Dr. Helffenstein; and as the Court has previously noted, it is acceptable and expected that medical professionals (and expert witnesses in general) may rely on results of tests conducted by others. See V.R.E. 703; see also, e.g., Gagnard v. Zurich American Ins. Co., 819 So. 2d 489, 493-94 (La. Ct. App. 2002) ("Not only is a medical expert permitted to testify to those conclusions that are based upon examinations performed by others, but medical experts are *expected* to rely in part on tests and examinations performed by others in arriving at their opinions."). While a physician's testimony cannot serve as a mere conduit for other expert opinion, the record here establishes that Dr.Kelley's own clinical observations, which necessarily include a subjective component based on informed experience, form the basis for his diagnosis and prognosis, properly supported by the tests and assessments of other medical professionals. There is nothing novel about this methodology; indeed, as already discussed, it is the standard medical model.

**ORDERS**

For these reasons, Defendants' motions to exclude expert testimony from Drs. Penney, Helffenstein, and

---

Plaintiffs' experts did consider and reject other possible sources.

[2] Defendants note that this quote appears in the context of rejecting a hearsay objection. Yet, the hearsay exceptions and Rule 703 reflect the reality of scientific collaboration, particularly modern medical practice.

Kelly are **DENIED**.

Signed at Brattleboro, Vermont, this 28th day of July 2004.


_____
John P. Wesley
Presiding Judge