DECUIR, Judge.
On September 9, 1991, the defendant was charged by Bill of Indictment with one count of Second Degree Murder, in violation of La.R.S. 14:30.1. The murder charge stems from the stabbing death of Alison Bou-dreaux.
On February 10, 1993, after a trial by jury of twelve, the defendant was convicted as charged. Subsequently, on April 22, 1993, the defendant was sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence.
The defendant now appeals on the basis of three (3) assignments of error.
FACTS
On July 26, 1991, between 1:00 and 2:00 a.m., Lee Pipkins, defendant, went to Alison Boudreaux’s trailer to discuss their ongoing problems. Defendant and Boudreaux, the victim, had a child out of wedlock. After the baby was born, defendant married Ester Pip-kins. Defendant and the victim had a history of friction between them. The night of *1244 the homicide,- defendant went with a knife to the victim’s trailer. Defendant had a quiet discussion with the victim about their problems. As defendant rose to leave, his knife caught on the barstool and fell out of his pocket.
Defendant testified that as he tried to leave, the victim attacked him. In the ensuing struggle the knife became unsheathed from its case, and defendant swung at the victim. The fight continued down the hall and into a bedroom. The record reflects conflicting testimony about the attack and the struggle.
The victim’s sister, Marilyn Sims, testified defendant raised his voice, saying, “I guess I got to do what I got to do.” The victim called out to her sister; Sims ran into the room to find defendant standing over the victim with a knife in his hand. Sims testified defendant chased the victim down the hall with the knife. At that point, Sims left the trailer to get help.
Mike Burns, a Lake Charles Police Officer, testified the defendant, when making his statement to police, did not remember how the stabbing occurred. The victim received numerous stab wounds and subsequently died.
ERRORS PATENT
A review of the record reveals two errors patent. First, defendant was not given credit for time served when sentenced. The second error patent involves the defendant’s prescriptive period for post-conviction relief.
Accordingly, the district court is ordered to amend the minute entry and commitment to give defendant credit for time served and to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Fontenot, 616 So.2d 1353 (La.App. 3d Cir.1993).
ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant contends the trial court erred in refusing to allow evidence of statements decedent made before her death.
La.C.E. art. 803(3) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * # * * *
(3) Then existing mental, emotional, or physical condition. A statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant’s then existing condition or his future action. As statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of de-clarant’s testament.
* * * * * *
Defendant argues decedent’s statements were relevant and admissible to show decedent’s state of mind, offered to prove her future action. Defendant contends the following inferences are reasonable:
I. Decedent’s statements create a reasonable inference of decedent’s future actions, if defendant’s wife were pregnant.
II. From this inference, one can infer decedent intended to provoke the defendant (action deliberately calculated to deprive defendant of his self-control and cool reflection).
Following a bench conference, the trial court ruled Foreemona Lemelle’s testimony about decedent’s state of mind on the day of the homicide was relevant to a manslaughter defense.
A. Testimony Admitted by the Trial Court
Foreemona Lemelle testified decedent came to Ms. Lemelle’s house at approximate *1245 ly 4:00 p.m. on the day of decedent’s death and stated:
Q Okay. Can you tell us what happened when you saw her that day?
A She knocked at the door and she asked if my mama was home because she wanted to tell her something. And at the time she wasn’t home. So, she was leaving, fixing to get back in her ear and I asked her, where was Ashley, her daughter.
And she said that she was going — she was at the day care and she had just come from work, and she was going to get her. Then she was going back to her car and all of a sudden she stopped and turned back around. She say, “Girl, let me tell you what I did today.”
And I said, “What?”
And she say, “I called Ester his wife, Lee’s wife, and told her that I was pregnant”. And she said, “Now, all hell is fixin’ to break aloose.”
And then after that she said — Oh, she said that Ester — she found out that Ester had a new car. And she tole me, she say, “if he can buy that bitch a new car, he’s gonna pay for my car and I’m gonna put Ashley in a higher day-care.”
When defense counsel attempted to question Ms. Lemelle about decedent’s statements one and one-half weeks prior to the homicide, the trial court found the earlier statements too remote to be relevant. However, upon cross examination, the following exchange occurred:
Q All right. And obviously then, she didn’t make any threats on Mr. Pipkins’ life?
A No.
Q She didn’t say, “I’m going to inflict great bodily harm on him” or anything of that nature, did she?
A No, not that day.
After a series of bench conferences, the trial court ruled the prosecutor opened the door to this response and allowed defense counsel to lead Foreemona Lemelle. The following testimony was admitted:
Q On that day did Alison say to you, “If I can’t have him no one else will”? Did she say that — did you hear her say, “If I can’t have him no one else will”?
A Yes.
B. Testimony Excluded by the Trial Court
The trial court did not allow Alice Le-melle’s testimony about her conversation with the decedent one and one-half weeks prior to the homicide.
Defense counsel proffered the following testimony of Foreemona Lemelle and Alice Lemelle. Foreemona Lemelle testified the victim, in her opinion, threatened the defendant’s wife, Ester, approximately one and one-half weeks before the homicide. Alice Lemelle testified the victim told Ms. Lemelle she was obsessed with the defendant. Alice Lemelle also testified defendant’s wife, Ester, was not pregnant.
Alice Lemelle also testified to the following conversation with decedent:
Q What did she have to say about your brother and his wife?
A She came over and she asked me — the first thing she asked me was, did I know that my brother had bought his wife a new ear. And I told her, no, I didn’t know anything about it. And she said, “Well, yeah, he bought her a new car. And guess what else?”
And I said, “What?”
And she said, “Do you know that your sister-in-law is pregnant?”
And I said, “No, I don’t believe that because someone would have done told me by now.”
And she said, yes, that Lee had told her that Ester was expecting.
Q Okay. What else did she say?
*1246 A And then she told me, she said, “The bitch will not live to have it because Ashley is going to be the only kid that he have.”
Q Okay. Did she say anything else?
A She said that Ashley was going to be well taken care of and she would make sure, if she had to kill Ester in order for that to happen. .
Q Is it correct to say that she also said, “If she couldn’t have Lee nobody was going to have Lee”?
A Yes, she did. She said that to me several times.
The Louisiana Supreme Court recently clarified this aspect of the evidence code in State v. Brown, 562 So.2d 868, 877-879 (La.1990), affirmed on remand, 594 So.2d 372 (La.App. 1st Cir.1991). Applying the principles therein we find in the instant ease, the victim’s statements were not offered to prove the truth of the matter asserted. As such, the victim’s statements are probably outside the scope of the hearsay exclusionary rule. Over the state’s objection, the victim’s statement that if she could not have defendant, then no one could, was admitted at trial. The victim’s threats about the defendant’s wife, Ester Pipkins, were not admitted at trial. Defendant argues the victim’s threats against defendant’s wife were admissible to show victim’s state of mind and future actions.
Whether victim’s threats against Ester Pipkins are hearsay (a direct assertion of speaker’s state of mind) or non-hearsay (a declaration tending to indirectly establish the declarant’s state of mind), under State v. Martin, 458 So.2d 454 (La.1984), and the La.C.E. 803(3), such statements are admissible if the declarant’s state of mind need not be an ultimate issue.
State v. Weedon, 342 So.2d 642 (La.1977), held such declarations are not admissible to show subsequent conduct of another. State v. Doze, 384 So.2d 351 (La.1980), held defendant’s state of mind was at issue, but declar-ant’s hearsay evidence could not be used to prove defendant’s motive for killing.
Brown, supra, points out that even a relevant state of mind declaration may not be admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misapplication by the jury. Victim’s threats against defendant’s wife were not communicated to defendant. If the victim had subsequently attacked defendant’s wife, then such statements would not have been prejudicial, confusing, or subject to misapplication.
When no evidence is presented to show decedent communicated her intention to defendant, then hearsay evidence of decedent’s declaration may not be introduced to prove defendant’s motive. When state of mind declarations are used to show decedent’s subsequent acts, then relevance does not depend upon communication to defendant. Martin, Doze, Weedon, supra. However, in these three cases the decedent’s subsequent acts were necessary to show the victim was last seen with the defendant.
In the case sub judice, the chain of inferences is simply too speculative. The defendant asks us to believe the victim’s threats against Ester Pipkins, approximately one and one-half weeks prior to the homicide, are relevant to prove defendant’s motive in killing the victim. There is no evidence suggesting the victim communicated these threats to defendant.
Brown recommends such declarations may be used as circumstantial evidence, which provide an intermediate basis for further inferences about declarant’s conduct. Brown states such a contingency reduces the probative force of the evidence, but not the admissibility of such declaration.
The victim’s threat about the defendant (“If I can’t have him, then no one can”) was properly presented to the jury, to show her state of mind or future actions. Victim’s threats about the defendant’s wife were not permitted. The trial court’s ruling on this admittedly gray area of evidence law is correct. The potential of prejudice, confusion and misapplication outweigh the probative *1247 value of the statements. The trial court did not abuse its discretion.
In any event, had the trial court erred by not allowing decedent’s threats about Ester Pipkins, such an omission is harmless error under La.C.Cr.P. art. 921. The value of this testimony is outweighed by substantial other evidence presented at trial.
ASSIGNMENT OF ERROR NO. 2
By this assignment of error, the defendant contends the trial court erred in failing to give requested special instructions.
Defendant requested the following jury instruction be read:
You may not convict the defendant of second degree murder if you find by a preponderance of the evidence that the act of killing was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection, and that the defendant’s blood had not cooled, nor would the blood of an average person have cooled, between the time of the provocation and the act causing the death.
Defendant contends the judge failed to fully instruct the jury that if the defendant met his burden of proof of manslaughter, then “they [the jury] could not return a verdict of guilty of second degree murder or that they must then return a verdict of manslaughter if the state had proven other elements beyond a reasonable doubt.”
La.C.Cr.P. art. 807 provides:
... A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
It is well settled that requested charges which are already substantially given and covered by the trial judge’s. general charge are properly refused. State v. Segu-ra, 464 So.2d 1116 (La.App. 3d Cir.), writ denied, 468 So.2d 1203 (La.1985).
Defendant cites State v. Lombard, 486 So.2d 106, 111 (La.1986) on remand 501 So.2d 889 (La.App. 5th Cir.), writ denied, 506 So.2d 504 (La.1987), for the proposition “a defendant who establishes by a preponderance of the evidence that he acted in a ‘sudden passion’ or ‘heat of blood’ is entitled to a manslaughter verdict. Where such proof has been introduced, a second degree murder verdict is inappropriate.” Defendant has omitted the first part of the quotation. Lombard held “sudden passion” and “heat of blood” are not elements of manslaughter, instead these are mitigatory factors in a defense, lessening the degree of culpability in a homicide. Id.; see also State v. Tompkins, 403 So.2d 644 (La.1981); State v. Temple, 394 So.2d 259 (La.1981); State v. Peterson, 290 So.2d 307 (La.1974).
The defendant’s requested jury instruction is potentially misleading and could require qualification or explanation prohibited by La. C.Cr.P. art. 807 supra. Defense’s introduction of the preponderance of the evidence standard is potentially misleading because in a homicide the burden of proof is on the state. Lombard clearly states the jury is free to infer these mitigating factors, even when the record contains no evidence of passion or heat of blood.
In the instant case, the trial judge defined both second degree murder and manslaughter in the general charge. Because the judge did delineate the distinction between the two offenses, the requested charges were substantially covered by the general charge and, therefore, were properly refused. The definitions given by the judge show that in order to find the defendant guilty of second degree murder, one must find that the killing was not committed in sudden passion or heat of blood. The general charge clearly establishes the state’s burden of proof and the mitigating factors of manslaughter.
ASSIGNMENT OF ERROR NO. 3
By this assignment of error, the defendant contends the trial court erred in denying defendant’s motion for new trial.
*1248 Defendant suggests assignment of error number one is sufficient to grant a new trial. Having found error number one without merit, we disagree. Further, the disputed testimony, (“If she couldn’t have Lee, nobody was going to have him.”) was heard by the jury, over the state’s objection. Foreemona Le-melle testified to this statement during trial. In proffer, Alice Lemelle also testified decedent made this statement. Alice Lemelle’s statement would have been cumulative in light of Foreemona Lemelle’s prior testimony. At the motion for new trial, defense counsel was wrong when he claimed this testimony was not admitted.
Defendant also argues the state either withheld exculpatory evidence or gave defendant false and misleading discovery information. Defendant contends the state’s omission caused prejudice and injustice to defendant. The basis of defendant’s claim is the state’s answer to discovery in paragraphs 2 and 3.
Defendant requested discovery of any oral confession or statement made by defendant. The state’s response indicated the defendant made the following statements: (1) oral statements to Ester Pipkins: (2) oral statements to Vallery Montgomery; (3) oral statements to Alan Reinecke, Eva Vereher, and Mike Byrne at the Lake Charles Police Department. The statements to Lake Charles Police were made in the presence of defendant’s attorney; the state characterized defendant’s statements as “admitting to the offense, but mitigating his culpability.”
Defendant requests either a new trial or an in camera inspection of the state’s files because a conflict between defendant’s statement to police (“admitting to the offense, but mitigating his culpability”) and the prosecutor’s statement in closing argument to the jury that defendant did not admit to the physical act in his statement to police.
We find defendant’s argument was not properly preserved for appeal. Defense counsel made no contemporaneous objection during the state’s closing remarks to the jury as required by La.C.Cr.P. art. 841. Defendant made no objection to discovery prior to trial. Defendant admits in brief, “[t]he state is probably correct that the defense should have complained of the incompleteness of the discovery answer ...”
In ruling on defendant’s motion for new trial, the court noted defense did not timely object to the state’s remarks. However, the trial court based its ruling under the thirteenth juror standard, saying, “I think what is key in making a decision is that there really is no conflict between the interest of discovery and the argument made by the prosecutor and the testimony of Mr. Byrne in this particular case.”
This court recently stated:
In State v. Landry, 524 So.2d 1261 (La.App. 3d Cir.1988), writ granted in part, writ denied in part, 531 So.2d 254 (La.1988), appeal after remand, 546 So.2d 1231 (La.1989), this court held that a trial judge, in reviewing the merits of a motion for a new trial must review the weight of the evidence, and make a factual determination as a thirteenth juror. This court further stated that, except for an error of law, an appellate court may not review the granting or denial of a new trial under La. C.Cr.P. art. 858 citing State v. Robinson, 490 So.2d 501 (La.App. 4th Cir.1986), writ denied, 495 So.2d 303 (La.1986). In so holding, this court reasoned that the trial judge’s statement indicating that he agreed with the jury’s interpretation of the evidence showed compliance with the “thirteenth juror” standard of reweighing the evidence, as outlined in Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). As a result this court found there was no error of law.
State v. Washington, 614 So.2d 242, 244 (La.App. 3d Cir.1993), writ denied, 619 So.2d 575 (La.1993).
Defendant has failed to demonstrate how injustice was done to the defendant, creating grounds for a new trial. La.C.Cr.P. art. 851. Defendant did not timely object to the prose *1249 cutor’s remarks. La.C.Cr.P. art. 841. The trial court properly reviewed defendant’s motion as a thirteenth juror. Washington, supra. In any event, there does not appear to be any misstatement in the prosecutor’s closing argument of the police officer’s testimony concerning the defendant’s statement. Furthermore, the testimony does not appear to be in conflict with the state’s answer to discovery.
For the foregoing reasons, defendant’s conviction is affirmed and the district court is directed to amend the commitment and minute entry to reflect that defendant receive credit for time served. The trial court is further directed to inform the defendant of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and file written proof that the defendant received the notice in the record of the proceedings.
Affirmed with Instructions.