650 So.2d 407 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Robert JORDAN, Jr., Defendant-Appellant.
No. CR94-1012.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
*408 Glenn G. Cortello, Charles F. Wagner, Alexandria, for State of Louisiana.
Charles Gregory Gravel, Michael W. Shannon, Alexandria, for Robert Jordan Jr.
Before DOUCET, C.J., and THIBODEAUX and SULLIVAN, JJ.
THIBODEAUX, Judge.
The defendant, Bobby Jordan, Jr., was indicted by the Rapides Parish Grand Jury on July 22, 1993 for the second degree murder of Walter Scott Loyden, violating La.R.S. 14:30.1. The defendant waived his right to a trial by jury and proceeded to trial. At the trial's conclusion on April 22nd, the trial court found the defendant guilty of the lesser included offense of manslaughter, a violation of La.R.S. 14:31.
On June 2, 1994, Jordan was sentenced to serve fifteen (15) years at hard labor, five suspended. On June 28, 1994, the trial court amended its sentence, providing for five years probation, one and one-half supervised and three and one-half unsupervised.
It is from this conviction and sentence the defendant now appeals.

ASSIGNMENTS OF ERROR
Jordan asserts two assignments of error which were properly briefed and argued: (1) the trial court erred in denying his motion for a new trial based on insufficient evidence, and (2) the trial court erred in denying his motion for reconsideration of sentence based on excessiveness.

FACTS
On the night of April 24, 1993 in Alexandria, the defendant foiled an apparent burglary, and pursued a man away from his home. On Sunday, April 25th, the defendant was driving down Willow Glen Road and saw the victim, Walter Scott Loyden, walking through the parking lot of Neighborhood Grocery. Believing the victim was the burglar from the previous night, the defendant swerved off the road and struck the victim with his car. It is not clear whether this contact was intentional. The defendant exited his car, arming himself with a .380 automatic pistol, yelling "Where is my shit, I know you've got my shit. Where is it?" The victim responded, "Who is you? Who is you? I don't know you." The two men began to grapple and exchange blows. There was testimony that the defendant hit the victim with his pistol at least once, but there was no medical evidence of such blows. In the course of the fight, the victim was shot once in the chest. Witnesses did not realize that he had been hit, partly because the fight continued after the shot. The victim backpedalled and fell backward over a nearby set of culverts with the defendant on top of him.
Witnesses testified that the defendant yelled at the victim and attempted to fire again, but that the weapon did not fire. Police subsequently determined that an empty cartridge had failed to eject, jamming the pistol. The defendant laid his pistol aside, then placed it on his car and waited for the police to arrive. The victim staggered away, collapsing after a short distance.

*409 ASSIGNMENT OF ERROR NO. 1

The defendant alleges the trial court erred in denying his motion for new trial, which was based on the argument that the verdict was contrary to the law and the evidence.
The standard of review for the denial of a motion for new trial is found at La.Code Crim.P. art. 858:
Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law.
See also La.Code Crim.P. art. 851:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
The standard of review for a trial court's denial of a defendant's motion for new trial is the "thirteenth juror" standard. Recently, this circuit discussed the jurisprudence:
In State v. Landry, 524 So.2d 1261 (La. App. 3d Cir.1988), writ granted in part, writ denied in part, 531 So.2d 254 (La. 1988), appeal after remand, 546 So.2d 1231 (La.1989), this court held that a trial judge, in reviewing the merits of a motion for a new trial must review the weight of the evidence, and make a factual determination as a thirteenth juror. This court further stated that, except for an error of law, an appellate court may not review the granting or denial of a new trial under La.C.Cr.P. art. 858 citing State v. Robinson, 490 So.2d 501 (La.App. 4th Cir.1986), writ denied, 495 So.2d 303 (La.1986). In so holding, this court reasoned that the trial judge's statement indicating that he agreed with the jury's interpretation of the evidence showed compliance with the "thirteenth juror" standard of reweighing the evidence, as outlined in Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). As a result this court found there was no error of law.
State v. Pipkins, 628 So.2d 1242, 1248 (La. App. 3d Cir.1993).
This case was adjudicated as a bench trial; thus, the judge was already sitting in the place of a jury. It is clear from the record that he carefully weighed all of the evidence presented, including the inconsistencies apparent in the various state witnesses's testimony. He also viewed the crime scene, with counsel present.
It seems unusual for a motion for new trial to arise in a bench trial. The judge is asked to review facts that he has already considered. However, there is apparently no legal impediment to the use of such a motion in a bench trial. See, e.g., State v. Duke, 625 So.2d 325 (La.App. 3d Cir.), writ denied, 629 So.2d 1183 (La.1993); State v. Diaz, 612 So.2d 1019 (La.App.2d Cir.1993). Thus, the trial judge in the present case was left with a motion to review law and evidence he had already reviewed and decided upon. His reasons for judgment run fourteen (14) pages and, sitting as the finder of fact, he found the defendant guilty of a lesser-included offense, manslaughter, rather than the charged offense, second degree murder. In part, he stated:
However, there is absolutely no question in my mind that Bobby Jordan intended to and did commit, if not one, but a series of aggravated batteries, of assaults, of several misdemeanors directed at a person while armed with a dangerous weapon that ended in the death of Walter Scott Loyden.
Second degree murder is defined, in pertinent part, at La.R.S. 14:30.1:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;
Manslaughter is defined, in pertinent part, at La.R.S. 14:31 A(2)(a):
A. Manslaughter is:
(2) A homicide committed, without any intent to cause death or great bodily harm.

*410 (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person;
Assault is defined at La.R.S. 14:36:
Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery.
Aggravated battery is defined by La.R.S. 14:34:
Aggravated battery is a battery committed with a dangerous weapon.
Whoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.
Battery is defined at La.R.S. 14:33:
Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.
The trial judge ultimately determined the defendant was guilty of a homicide committed in the course of a misdemeanor, an assault upon the victim, or during a felony, an aggravated battery. In his reasons for judgment, the trial judged weighed the testimony from the various witnesses as well as the medical evidence that was presented. He considered the elements of the crime charged. There is no question that Jordan shot the victim, killing him. The crux of the defense was that the shooting was an accidenta by-product of the physical struggle between the two men. The trial judge considered the matter and stated the following:
The testimony given by Mr. Jordan was that he made a split-second decision to cross in front of other traffic. He had to avoid getting hit by other traffic. He had to slam on the brakes not to hit the person that he felt he, quote, "had to confront," end quote, and I just don't see that at that point he would be surveying the neighborhood to see on Sunday afternoon who posed a threat to him at a public place. I believe he took the gun with him for protection or use against the defendant, I mean, the victim or at least to use in the confrontation with the person that he thought was repeatedly stealing his property. With his anger and attention directed at that particular person, it doesn't make sense that he'd be concerned with the other people. I am ... I'm satisfied that the witnesses who came to testify all had an adequate field of view, that they are all sincere in their beliefs of what happened. I am somewhat concerned in some of the comments and things that were made with the influence of what was clearly a hostile crowd or an angry crowd that may have had some influence on ascribing motives to certain actions that arose afterwards. I do not think that the crowd's reaction would have been an influential part in actually affecting the memory and observation of the witnesses who saw the event take place. There are some questions as to how the fight or fights occurred.
* * * * * *
There is little question that the gun that Bobby Jordan took with him out of the car that day was loaded and cocked. By his testimony, the clip held six shells. By police testimony, there were five shells left in the clip, one in the feeder tube, and a spent casing jammed in the gun. The testimony presented by Ray Delcomyn without a hammer to the back of that particular gun, I can see of no way you could load the seventh shell into the chamber and not arm the firing pin, not cock it. I can see of no way to uncock it. So the Court can only find that at the time Mr. Jordan got out of the car, he got out with a loaded and cocked weapon. We are faced with a problem in a second-degree murder case of specific intent, which is what the case comes down to, and it has to be a specific intent to kill or create great bodily harm. From prosecution witnesses, there were three or four different times the shooting would have occurred, falling back, getting up, standing back, backing up. Defense witnesses, Connie Gentle, places the issue immediately upon breaking away from one of the two engagements. The defendant testified that he was not sure *411 exactly when the gun went off. The thing that is troubling is the fight seemed to ensue as if no one had been shot. All the witnesses testified they didn't know Little Walter had been shot.
The trial court denied the motion for new trial without argument, stating, "I think the record speaks for itself." This is correct, especially since the case was adjudicated as a bench trial. The trial judge had already considered all of the evidence personally.
We are satisfied that the elements of La. R.S. 14:31 A(2)(a) were proven beyond a reasonable doubt. There is no error in the trial court's judgment.

ASSIGNMENT OF ERROR NO. 2
By this assignment, the defendant alleges that the trial court erred in denying his motion to reconsider sentence, which was based upon an argument of excessiveness. Sentencing is governed by La.Code Crim.P. art. 894.1:
A. When the defendant has been convicted of a felony, the court shall consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission in determining the appropriate sentence to be imposed. However, no sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the court to impose a sentence in conformity with the sentencing guidelines of the commission.
B. A court may impose a sentence, which includes incarceration or other significant sanctions, which is appropriate under the sentencing guidelines notwithstanding any limitation on probation or suspension of sentence under the provisions of Article 893.
C. The court shall state for the record the considerations taken into account, including any aggravating and mitigating circumstances which may be present, and the factual basis therefor in imposing sentence.
Under the recently-decided case of State v. Roger Smith, 639 So.2d 237, 240 (La.1994), the sentencing guidelines are advisory rather than mandatory:
On application by the State, we granted rehearing11 in this matter and, for the reasons which follow, now hold that: (1) while a trial judge must consider the Guidelines, he has complete discretion to reject the Guidelines and impose any sentence which is not constitutionally excessive,12 but is within the statutory sentencing range for the crime of which a defendant has been convicted, so long as he states for the record the considerations taken into account and the factual basis for his imposition of that sentence, La.Code Cr.P. art. 894.1; and (2) where the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
(Footnotes omitted).
The sentencing transcript shows the trial judge, after hearing the defendant's statement and counsels' arguments, took several factors into account and fully considered the guidelines when passing sentence:
The purpose of sentencing is to balance punishment to crime. Nothing that we do today can bring back Walter Loyden. But nothing we do today should permanently remove Bobby Jordan from family and society. The case is unusual in that it does involve an atypical killer in a heinous crime. I find the Guidelines to be of little use. The development of the Guidelines was, by my appreciation, just that, for a guidance in the typical case. The classification of a 1-G classification has been considered and it will be noted for guideline purposes. It is, as we say, above the line which calls for incarceration. But even after considering the factors and the guidelines and putting into it societal interest, mitigating and aggravating conditions, I dispense with them and will use them only for guidance. Bobby asked for probation, lots of community service and a chance to prove his worth to the community. The State actively seeks in excess of 21 years. The Court feels neither of these are appropriate. The aggravating circumstances *412 the Court finds comes from the testimony itself. It comes from the blending of the witnesses' testimony and the observance of the trial. The defense offers that the aggravating circumstances listed are not applicable due to being major or part of the crime itself and already factored into the Guidelines. I disagree. While proof of murder, beyond a reasonable doubt, was not offered, the facts did get very close to that elusive standard. This was not the typical manslaughter arriving from a sudden passion or a drunken fight where someone picks up a pipe and someone ends up dead. Bobby set the events in motion. He chose the confrontation, initiated and escalated it, fired the fatal shot. He continued the confrontation. I found the killing to be brutal. The State's failure to prove murder beyond a reasonable doubt does not diminish the brutality of the killing. Walter Loyden was struck down unexpectedly by a car. He was attacked by a pistol, combined with threats and intimidation. He was shot, further intimidated and threatened as he died. Bobby's supporters who come from all walks of life and have written numerous letters all say Bobby would not do such a thing. The eyewitnesses said Bobby did such a thing. There's no question Bobby got out of the car with a loaded weapon. Sunday afternoon as church was just letting out, he created the conditions for the killing. I don't for one moment envision the scene as being a church meeting. However, in the setting that was there that 12:15, only Bobby could have provoked the need for the protection of a gun. The use of the auto in striking little Walter was an aggravating factor and I find that as a matter of fact. Bobby was hit. I mean, Bobby did hit him with the gun and, as little Walter regained some of his composure and struck back in defense, Bobby answered the token resistance of an unarmed man with gunfire. Even after point-blank firing of the weapon, Bobby re-initiated the fight. While the witnesses may not have been able to see or had trouble seeing the effect of the shooting on Walter, Bobby's proximity must have made clear the terror and pain as he continued to threaten Walter Loyden with the gun. He apparently tried to shoot him again in spite of the pleas from the neighbors. This presents a terrifying infliction of emotional stress, which I find to be an aggravating factor. The firing of the gun with so many people ... While not a church meeting, there were people in the neighborhood. In fact, there were people at just about all points of the compass surrounding the incident. The firing of the gun with that many people around, which the Court does not chalk up to be an accidental firing, but the firing of the gun does put more than one person at risk of harm. If this was a dangerous neighborhood that Sunday, it was because of Bobby Jordan. The scales of justice are not to be tilted to favor the successful or politically connected. On the ladder of justice, there's no top or bottom. There are only rungs that we all must climb. But I agree justice should not stand blindfolded. We must look to the circumstances requiring the tempering of justice with compassion, and there are mitigating factors that would reduce the severity of the sentence suggested by a similar slaying. The service Bobby has provided to country and community is outstanding. The commitment to live in and help improve the area of this killing that gave rise to the frustration from repeated burglaries speaks well for him but does not excuse the taking of the law into his own hands. We must trust the system. No one is above the law.
As the trial judge fully complied with the requirements of Smith and La.Code Crim.P. art. 894.1, the only remaining analysis is for constitutional excessiveness.
Article 1 § 20 of the Louisiana Constitution of 1974 prohibits "cruel, excessive, or unusual punishment." Therefore, a sentence which falls within the statutory limits may nevertheless be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3d Cir.1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution *413 to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
La.R.S. 14:31 B provides:
B. Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. However, if the victim was killed as a result of receiving a battery and was under the age of ten years, the offender shall be imprisoned at hard labor, without benefit of probation or suspension of sentence, for not less than two nor more than forty years.
The defendant's sentence of 15 years, five of those being suspended, makes a measurable contribution to acceptable penal goals and does not shock one's sense of justice.

ERROR PATENT
A portion of the defendant's sentence is illegal. The trial court amended the original sentence on its own motion, imposing three and one-half years supervised probation and one and one-half years unsupervised probation on the defendant. La.Code Crim.P. art. 893(A) requires that all of the probation be supervised:
A. When it appears that the best interest of the public and of the defendant will be served, the court after a first or second conviction of a noncapital felony, may suspend, in whole or in part, the imposition or execution of either or both sentences, where suspension is allowed under the law, and in either or both cases place the defendant on probation under the supervision of the division of probation and parole. The court shall not suspend the sentence of a second conviction unless the court finds that such offense did not involve the use of a dangerous weapon by the defendant, the offense occurred at least five years after satisfaction of the sentence imposed for the first conviction, and the defendant was not charged with any other felony since the date of first conviction. The period of probation shall be specified and shall not be less than one year nor more than five years. The suspended sentence shall be regarded as a sentence for the purpose of granting or denying a new trial or appeal.
This court has stated in State v. Phillips, 606 So.2d 49, 50 (La.App. 3d Cir.1992):
Although not raised on appeal, we learn from examining the record that appellant had prior felony convictions. Thus he was not eligible for suspension of any portion of his sentence. La.C.Cr.P. art. 893. Therefore the sentence imposed was illegally lenient. However this issue was not raised by the State so the matter will not be remanded for resentencing. State v. Fraser, 484 So.2d 122 (La.1986).
We are aware that in an earlier opinion [State v. Solomon, 549 So.2d 938 (La.App. 3d Cir.1989)] the case was remanded for correction of an illegally lenient sentence. No writ application was made to the Supreme Court in Solomon. In that case the illegal portion of the sentence provided for "unsupervised" probation whereas "supervised" probation was required by the statute. No jail time was involved. The Supreme Court in Fraser stated that "there is no codal or statutory authority for an appellate court to search the record for patent sentencing errors to the detriment of the only party who sought review by the appellate court." In the present case, although the defendant appealed his sentence, he did so on grounds of excessiveness only. The illegal portion of the sentence is favorable to the defendant. We find that Fraser is controlling.
Further it offends a sense of "fairness" to subject the defendant to the possibility of a harsher sentence when the state has not complained of the sentence. Such action would have a chilling effect on the right of a defendant to seek appellate review.
The conviction and sentence will be affirmed.
*414 Thus, although defendant received an illegal sentence, this court will not correct the sentence since the error is favorable to the defendant.
Moreover, the amended sentence represents a scheme calculated to punish Jordan for his crime, while allowing him the chance to again become a positive force in society. The judge's remarks at the original sentencing reflect this as the intent of the sentence.

CONCLUSION
For the reasons discussed, the defendant's conviction and sentence is affirmed.
AFFIRMED.