JiDECUIR, Judge.
Dwaine Young was charged by bill of indictment with the offense of second degree murder of Peter Rachal on December 16, 1993, in violation of La.R.S. 14:30.1.
The defendant waived a jury and elected to be tried by the judge. Trial commenced on August 18, 1994, and the court found the defendant guilty as charged on August 22, 1994. The defendant timely moved for post judgment verdict of acquittal and for a new trial; both motions were denied. The, defendant now appeals his conviction, as well as the denial of his post-verdict motions.
FACTS
On the evening of December 16, 1993, Peter Rachal and his brother Joseph drove from the Boyce, Louisiana, area to Alexandria to buy crack cocaine. They made two purchases earlier that evening without incident; on their third “buy” they encountered the defendant. Rachal exited the truck and asked to buy a $20.00 “rock” of crack from the defendant. Rachal tasted the substance the defendant gave him and stated it was not real crack; he reclaimed his $20.00 bill from the defendant. Rachal returned to the truck, but as he tried to close the passenger door, the defendant shot him in the chest. Joseph Rachal drove the victim to a hospital, where he subsequently died.
TERRORS PATENT
We have reviewed the record and find no errors patent.
ASSIGNMENT OF ERROR NOS. 1 AND 2
The defendant has combined these two assignments in his brief, therefore we will address them together. By these assignments, the defendant alleges the trial court erred in accepting and recognizing Alexandria Police Detective J.D. Griffith as an expert in crime scene investigation, residue analysis, blood-spatter interpretation, and bullet trajectory analysis, and in permitting the detective to give opinion testimony in these areas. Specifically, the defendant complains tests that might have produced exculpatory results were not performed, and also that some of Detective Griffith’s testimony included opinions unsupported by any test results.
At trial, Detective Griffith was first offered and qualified as an expert in crime scene investigation and data collection. According to his testimony, he has been with Alexandria’s Crime Scene Investigation Unit for nearly four years, and has investigated hundreds of crime scenes. He has attended a number of schools and seminars, including the Latent Fingerprint Developing and Classification school provided by the FBI. Detective Griffith has previously been accepted as an expert in the Ninth Judicial District.
Later, the detective was offered as an expert in identification of gunshot residue and blood-spatter interpretation. He stated his *303 qualifications and was accepted by the trial court. Before the trial, the defendant was provided with the physical evidence, lab reports, the autopsy report, and Detective Griffith’s crime scene reports through open-file inspection.
We note that Detective Griffith’s qualifications as a gun-residue expert were not extensive. His training consisted of a two-hour video with a booklet, on-the-job training, and “in-house” experimentation, i.e. test-firing into approximately twenty T-shirt samples. The trial court noted this and agreed that it would be considered in giving weight to the detective’s testimony.
Detective Griffith’s qualifications in blood-spatter analysis were more extensive. He was trained by police instructor Ray Deleo-myn, using a national textbook by Herbert Leon McDonald, and “in-house” exercises using a towel soaked with whole blood. Additionally, Detective Griffith attended a course in New Orleans, and previously qualified as an expert in blood-spatter analysis on three occasions.
|,3We note that defense counsel objected numerous times and argued strenuously against the detective’s qualifications.
The competence of expert witnesses is within the sound discretion of the trial court, and its rulings will not be disturbed on appellate review in the absence of manifest error. State v. Howard, 626 So.2d 459 (La.App. 3 Cir.1993). This is a high standard for review. In reviewing Detective Griffith’s qualifications, as summarized above, we cannot say the trial court committed manifest error in accepting the detective as an expert. Further, the lower court showed great caution, initially accepting Detective Griffith only as an expert in crime scene investigation. The officer’s expertise in other areas, i.e., blood-spatter analysis and gunshot-residue analysis, was dealt with separately as each issue arose.
Additionally, the defendant complains of tests that were not performed, such as the lack of scientific gun-residue testing on the defendant’s hands or on the victim’s T-shirt. However, as the state pointed out at trial, it has discretion in how to make its case against a defendant, including what tests to conduct. State v. Green, 94-986 (La.App. 3 Cir. 3/1/95); 651 So.2d 435. The defendant has made no argument that he was prevented from conducting such testing himself. Thus, this assignment lacks merit.
ASSIGNMENT OF ERROR NO. 3
The defendant has not briefed this assignment; failure to argue an assignment of error constitutes a waiver of that error. Uniform Rules — Courts of Appeal Rule 2-12.4.
ASSIGNMENT OF ERROR NO. 4
By this assignment of error, the defendant urges the lower court erred in denying the defense motion for a “directed verdict” of acquittal. The defendant argues that the state’s case is circumstantial, and there was no evidence he had specific intent to kill at the time he discharged the weapon.
This circuit has held that a trial court’s denial of a motion for acquittal is reversible only where there is no evidence of a crime or an essential element thereof, or where the denial was a palpable abuse of discretion. State v. Martin, 543 So.2d 1020 (La.App. 3 Cir.), writ denied, 550 So.2d 625 (La.1989). On review, the trial court considers the entirety of the evidence in the record. State v. Shelton, 545 So.2d 1285 (La.App. 2 Cir.), writ denied, 552 So.2d 377 (La.1989); this | .¡standard differs from the Jackson standard used in appellate review of sufficiency of trial evidence. State in the Interest of G.M., 617 So.2d 219 (La.App. 5 Cir.1993).
The trial judge applied the Jackson standard (viewing the evidence in the light most favorable to the state) in denying the defense motion, but we find that any error in using Jackson was harmless. As will be discussed more fully under a subsequent assignment, the state presented evidence indicating all the elements of second degree murder. It cannot be said there was no evidence of the offense, nor that the lower court committed a palpable abuse of discretion in denying the acquittal motion.
The court had before it an eyewitness account by the victim’s brother, Joseph Rachal. *304 Although he did not see the defendant pull the trigger, Joseph Rachal did see the transaction that preceded the shooting, and he did see the gun. There was also medical testimony, police testimony, and the defendant’s own statement. Although the defendant’s statement indicated self-defense or accident was involved, it eliminated any problems as to identification of the defendant; i.e. there is no reasonable hypothesis that some third party killed the victim, Peter Rachal.
Viewing the evidence on the record, we find no essential elements of the crime charged are missing. On appeal, the defendant specifically attacks the element of specific intent. Specific intent may be inferred from the circumstances and defendant’s actions. State v. Yarbrough, 596 So.2d 311 (La.App. 3 Cir.), writ denied, 599 So.2d 317 (La.1992). The medical evidence indicates the bullet entered near the victim’s right armpit and traveled diagonally downward and rearward right-to-left, coming to rest in the victim’s left lower abdomen. As the pathologist testified, this is consistent with a sitting victim and standing assailant. Police testimony and Joseph Rachal’s testimony revealed the same scenario; the victim was sitting in the passenger side of the truck, and the defendant shot him from the side at close range.
The evidence just summarized reveals specific intent to kill, or at least, inflict great bodily harm. Considered reasonably, gunshots to the torso have no other purpose but to kill or inflict great bodily injury. The Martin standard for overturning a trial judge’s denial of an acquittal motion is high. The defendant’s arguments do not meet the Martin threshold. Therefore, this assignment lacks merit.
REASSIGNMENT OF ERROR NOS. 5 AND 6
By these assignments, combined in the defendant’s brief, the defendant argues the evidence adduced at trial was insufficient to support his conviction. Further, he urges that the ease against him was circumstantial, and the evidence adduced below was insufficient to have excluded every reasonable hypothesis of innocence, as required by La.R.S. 15:438.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
La.R.S. 15:438 states:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of evidence.
The statute’s standard is not different from the Jackson standard. Rather, the statutory analysis becomes part of the Jackson test, where the sufficiency of circumstantial evidence is called into question. See, e.g., State v. Rice, 626 So.2d 515 (La.App. 3 Cir.1993).
Dwaine Young was convicted of second degree murder, a violation of La.R.S. 14:30.1 A(l):
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm.
*305 Self defense in a homicide situation is defined, in pertinent part, at La.R.S. 14:20(1):
A homicide is justifiable:
|e(l) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
The elements of the state’s case have been outlined in the discussion of previous assignments. We turn now to the defendant’s presentation.
The defendant’s uncle, Alvin Dauzat, testified that on the night of the offense he heard a gunshot in the neighborhood. He had heard no prior altercation or arguing. Mr. Dauzat looked outside and saw a truck pulling away and an unidentified male walking down the street. The next day he heard that police were inquiring about the defendant, so he took defendant to the police station. While Mr. Dauzat called the police, the defendant retrieved a pistol in a Crown Royal bag. Mr. Dauzat did not see where the pistol had been left.
In his statement to police, admitted as S-2, the defendant stated that the Rachals pulled up next to him as he was walking down the street. According to the defendant, the victim then opened the truck door and demanded money three times. It is not clear in the original statement, but the defendant was apparently claiming it was the victim who originally had the gun. In the defendant’s version of the incident, the two men struggled for the pistol and it went off. His testimony at trial outlined the same general scenario, although his trial testimony did contradict his earlier statement on some points, e.g., whether the victim exited the truck.
We find the evidence adduced by the state satisfies the elements of 14:30.1 and excludes every reasonable hypothesis of innocence. The trial was essentially a credibility contest between the witnesses on each side of the case. The defendant produced an additional eyewitness, Rufus Smith, but this witness’ version of events did not mesh with the defendant’s own account of the incident. From Smith’s testimony, it appeared the shot was fired while the defendant and the victim were standing in the street. The defendant’s testimony was unclear as to whether the victim was standing or sitting when the shot was fired. From Smith’s testimony, it appeared the victim exited the truck, approached the defendant, and grappling ensued. From the defendant’s own account, it appeared the victim had not cleared the door area of the truck, and possibly not even stood up, when the defendant charged and began grappling.
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witness and Lis a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La.1987).
A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson, 443 U.S. 307, 99 S.Ct. 2781. Where rational trier’s of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. See State v. Mussall, 523 So.2d 1305 (La.1988).
Additionally, the pathologist’s testimony is consistent with the state’s scenario and inconsistent with the defendant’s version of the incident. For the reasons discussed, this assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. 7 AND 8
In these assignments, the defendant alleges the trial court erred in denying his motion for new trial and his “motion in arrest of judgment.” The defendant offers no argument as to a motion in arrest of judgment, and no such motion appears in the record. *306 Thus, we will discuss only the defendant’s motion for a new trial.
The standard of review for a trial court’s denial of a defendant’s motion for new trial is the “thirteenth juror” standard. Recently, this circuit discussed the jurisprudence:
In State v. Landry, 524 So.2d 1261 (La. App. 3 Cir.1988), writ granted in part, writ denied in part, 531 So.2d 254 (La.1988), appeal after remand, 546 So.2d 1231 (La.1989), this court held that a trial judge, in reviewing the merits of a motion for a new trial must review the weight of the evidence, and make a factual determination as a thirteenth juror. This court further stated that, except for an error of law, an appellate court may not review the granting or denial of a new trial under La.C.Cr.P. art. 858 citing State v. Robinson, 490 So.2d 501 (La.App. 4 Cir.1986), writ denied, 495 So.2d 303 (La.1986). In so holding, this court reasoned that the trial judge’s statement indicating that he agreed with the jury’s interpretation of the evidence showed compliance with the “thirteenth juror” standard of reweighing the evidence, as outlined in Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). As a result, this court found there was no error of law.
State v. Pipkins, 628 So.2d 1242, 1248 (La.App. 3 Cir.1993).
IgThis case was adjudicated as a bench trial; thus, the judge was already sitting in the place of a jury. It is clear from the record that he carefully weighed all of the evidence presented, including the inconsistencies apparent in the various state witnesses’ testimony. He also viewed the crime scene, with counsel present.
It seems unusual for a motion for new trial to arise in a bench trial. The judge is asked to review facts that he has already considered. However, there is apparently no legal impediment to the use of such a motion in a bench trial. See, e.g., State v. Duke, 625 So.2d 325 (La.App. 3 Cir.), writ denied, 629 So.2d 1183 (La.1993); State v. Diaz, 612 So.2d 1019 (La.App. 2 Cir.1993). State v. Jordan, 94-1012 (La.App. 3 Cir. 2/1/95); 650 So.2d 407, 409.
The trial judge in the ease sub judice was in a similar position. As mentioned in the earlier assignments, the points raised by the defendant involve credibility and weight of the evidence, which are squarely within the province of the trial court.
At the hearing on the motion for new trial, held on two separate dates, the defense presented two witnesses. Seven-year-old Marquita Dauzart, the defendant’s mother’s goddaughter, was found unreliable by the trial judge, and the defense conceded as much on appeal. The second defense witness was Steven Sawyer, a hospital worker from Shreveport. He testified he was in the area visiting relatives and saw defendant and the victim engaged in a physical struggle at the time of the shooting. Sawyer heard the shot, but did not see the gun. The trial judge had viewed the scene during trial, and indicated that Sawyer would not have had full view of the defendant and the victim because of his location and the position of the truck. Although Sawyer admitted he had known the defendant in the past, and is related to the Dauzarts, he indicated he and the defendant are not close friends.
Questioning the trial court’s ruling, the defendant cites State v. Knapper, 555 So.2d 1335 (La.1990) to support this claim for a new trial. In Knapper, as in the case sub judice, the defendant brought forth a new eyewitness to a shooting incident. The Louisiana Supreme Court reversed the decisions of the trial court and the appeal court, and awarded a new trial to Knapper. The high court reasoned that with the new testimony, a different jury probably would have reached a different verdict, acquitting Knapper. Id. at 1339-1340. Knapper is distinguishable because in that case, the new witness testified he saw the entire sequence of events involving the shooting. In the present case, Sawyer never saw a gun and did not see the shooting. Additionally, the state’s case is supported by the physical evidence.
|9The lower court’s decision on the new trial motion, like the decision at trial, was apparently based upon a determination that Joseph Rachal was more credible than the *307 defense witnesses, on the pathologist’s testimony as to the downward and sideways path of the bullet, and upon Detective Griffith’s testimony (accompanied by an in-court demonstration) that the holes in the victim’s shirt were consistent with a downward diagonal shot. In closing, we note two details that had a bearing on the trial court’s credibility determinations. One was that a twenty-dollar bill was found in the track when police investigated the shooting. In the prosecution’s scenario, the victim had retrieved the bill when he determined the crack was phoney. Additionally, the defendant turned in the gun with no bullets in it. The lower court apparently saw this as having a bearing on custody and control of the weapon, and ultimately, the defendant’s credibility as well. At trial, the defendant claimed to have picked the weapon up from the pavement after the wounded victim and his brother sped away. Such details reasonably bore on the lower court’s credibility determinations.
As the record reveals no error of law on the trial court’s part, this assignment is without merit.
The defendant’s conviction and sentence are affirmed.
AFFIRMED.